### CHARLES A. SELLICK vs. AMASA C. HALL.

The defendant had constructed a covered channel for a small brook that ran through his premises in the city of *N.* This channel proved insufficient for the flow of all the water that came down the brook in times of heavy rain, and by its obstruction caused the water to overflow upon and injure the adjoining premises of the plaintiff. The city, since the defendant's channel was made, had constructed several sewers and drains which emptied into the brook above his premises, by which a considerable quantity of sewage, and of surface water that it was claimed would have gone in other directions, was let into the brook. In a suit for the damage to the plaintiff's property it was held—

1. That the defendant was not liable for any damage beyond that caused by the natural flow of the water, including its increased flow from heavy rains and other ordinary natural causes.

2. That it was no reason for holding the defendant liable for more than this that the proportion of the damage done by the overflow of the natural water of the brook was difficult of ascertainment.

3. That the defendant and the city could not be regarded as joint tort-feasors.

The defendant claimed that the city had, before the injury, by legal proceedings taken the entire brook for a public sewer, and that the channel within his own premises had under those proceedings passed out of his control and into that of the city. The plaintiff claimed that the proceedings were not regular and complete and had not vested a legal right to the sewer in the city. Held that the question was whether the city had in fact taken possession and control of the channel for a sewer, the defendant being liable for the continuance of the nuisance without reference to the legal proceedings, so long as the actual possession and control had not passed from him to the city.

The declaration contained a count in assumpsit, upon an agreement of the defendant that the plaintiff's premises, which he had purchased of the defendant, were dry and the cellar free from water, and another count in case for

the wrongful act of the defendant in obstructing the water of the brook and causing it to overflow upon the plaintiff's premises. The jury brought in a verdict for the plaintiff on the latter count only. Held that as the verdict rested wholly on that count, the other was to be regarded as out of the case, and that therefore the judgment would not be arrested for the misjoinder of the counts.

The act of 1875 authorizes the joinder of assumpsit and case where both counts are for the same cause of action. An allegation that two counts thus joined are for the same cause of action is of no avail where it is apparent that they are not so.

ACTION on the case for damages from the overflow of a brook obstructed by the defendant; brought to the Superior Court in New London County, and tried to the jury on the general issue before *Culver, J.* The declaration contained also a count in assumpsit, upon an agreement of the defendant, from whom the plaintiff purchased his premises, that they were dry and the cellar of the house free from water; the two counts being alleged to be for the same cause of action.

On the trial it appeared in evidence that the plaintiff was the owner of the premises described in his declaration, that he purchased them of the defendant in the spring of 1874 for $3,500, and entered into possession of the same in May of that year, and that at that time a covered channel or sewer, through which Franklin Street Brook ran, passed along in the rear of his land upon the land of the defendant, of the sufficiency of which the plaintiff claimed that he knew nothing. Before the filling in by the defendant, and the construction of his covered channel or sewer, the plaintiff claimed to have proved that the premises now owned by him were dry and free from overflow, the ground descending to the brook in the rear, which was then an open brook flowing without obstruction. The defendant then owned and still owns and occupies lands adjoining the plaintiff's premises up the stream on the north and also on the west, which, with the land sold to the plaintiff, he purchased in 1867, through the midst of which lands, being low and swampy, Franklin Street Brook flowed. The defendant, soon after his purchase, filled in earth and gravel over and upon the brook and low lands, placing thereunder for the passage of the water a cement

pipe of horse collar shape, narrow at the bottom and wider above, thirty inches in greatest height and twenty inches in greatest width; above which pipe, through lands of the adjoining proprietor up stream, a stone culvert was constructed, three by three and a half feet, for the flow of the brook; and below his horse collar pipe the defendant first laid a sixteen-inch cement pipe, which in 1869 he took up and built in its stead a three by three and a half feet stone culvert.

The plaintiff offered evidence to prove that, in August, 1874, his premises were flooded from the overflow caused by the insufficiency of the defendant's sewer; and several times a year afterwards, down to the commencement of the present suit in October, 1877; that the defendant's sewer, beginning above the plaintiff's premises, was so placed between the two larger stone sewers as to form such a shoulder at the upper end as would catch the floating debris and tend to choke it up, and that the horse collar shape of it also made it more liable to choking from this cause; that it was not large enough when first put in, nor had since the plaintiff's purchase been large enough, to pass the water of the brook swelled by ordinary heavy rains; and that the defendant was in the exclusive possession of his premises through which the sewer passed, from the time of the plaintiff's purchase to the commencement of the suit, and had sole control of the sewer during all that period. The plaintiff also introduced evidence to prove, and claimed he had proved, all his allegations of damage.

The defendant claimed that the city of Norwich, and not he, had exclusive control of the sewer, and to prove the same offered the doings of the common council of the city, from its printed journal, being proceedings for the taking of Franklin Street Brook as a city sewer from its source at the head of Franklin Street to the Shetucket river. To all this evidence the plaintiff objected, on the ground that such proceedings were incomplete and did not reach the actual taking of the brook for such purpose in its proposed extent, and especially not through the premises of the defendant; but the court admitted the evidence subject to the objection.

From this evidence it appeared that the authorities of the city had begun proceedings with reference to taking the brook for a public sewer in September, 1871, and that various resolutions on the subject had been passed by the common council of the city between that date and August, 1874, the time when the first injury complained of was done; but in the view which the court takes of the matter, it is not necessary that these proceedings should be more fully stated.

The defendant also offered evidence of the fact, which was not controverted, that the city had expended a large amount of money in straightening and enlarging the culvert over the brook at various places between its mouth and source, but there was no evidence that the city had expended anything on the brook through the premises of the defendant, or had used the defendant's pipe for a sewer, otherwise than by sewering into the brook at points above, and using it by the flow of water thus turned into it and running through the defendant's pipe, which the defendant claimed had been increased by such sewerage.

The defendant also offered evidence to show that, attached to the sewers in Broadway, Broad Street and other streets were catch-basins, by which the surface water was rapidly collected and delivered into the brook, and by which sewers this water, the sewage, and the water gathered from the roofs of buildings, had increased the flow of the brook at times of rainfalls more than double at a point below where Spalding's Brook flows into Franklin Street Brook, below the premises of the plaintiff; also evidence that the city had somewhat enlarged the stone ditch or channel of 'the brook below Broad Street for some distance and covered it over, on account of its offensiveness from the sewage flowing into it.

The defendant also offered evidence to prove, and claimed he had proved, that previous to these acts of the city increasing the flow of the brook, the pipe laid by him was large enough to carry off all the water of the brook, and that the overflows were occasioned by the acts of the city, and that when they occurred the brook was extraordinarily high by reason of extraordinary and heavy falls of rain. He also

claimed that the city had constructed divers other sewers leading into the brook above his premises, and that all these sewers and the brook were used, during all the time when the plaintiff claimed to have been damaged, as public sewers. It also appeared that the plaintiff had made complaint of the nuisance to the mayor of the city and to the defendant, and each claimed that it was the duty of the other to attend to the matter.

The plaintiff introduced evidence to prove, and claimed he had proved, that the brook had always, since there were residences in that part of the city, been used as a sewer by persons living near it, and was largely so used when the defendant made his covered sewer; also that the sewers and catch-basins constructed by the city above Broad Street and elsewhere above the defendant's premises had relieved rather than burdened the defendant's sewer, by taking off more rapidly the rainfall and surface water which were near them, before the surface water upon the large water-shed above came along.

Evidence was introduced on both sides upon the question whether the city authorities had in fact taken possession and control of that part of the brook running through the defendant's premises, for a public sewer.

The counsel for the defendant requested the court to charge the jury that it was either, upon the foregoing facts, the duty of the city or of the defendant, to take care of the sewer at the point in question; that it was not the joint duty of both; that the city was estopped from denying that it was using the brook as a sewer legally; and that the defendant could not be subjected to pay damages by reason of his channel becoming insufficient by means of the increase of water and sewage from the city sewers and drains above; also, that if the jury should find that the city had voted to take the brook, that he had assented that it should do so, and that the city had in fact commenced to use, had used, and was using the brook as a public sewer, at the point above where it poured through the defendant's pipe, in the manner and to the extent claimed by the defendant, it was the duty of

the city to maintain the sewer at the point in controversy, and that the city was liable for damage while it was thus rendered insufficient and used by the city, without other condemnation of the defendant's premises or other agreement than had been made, and that no more formality was required in taking the brook to render the city liable under the circumstances.

The court charged the jury as follows:—

"If you find from the evidence that the immediate cause of the plaintiff's damage, which you shall find he has sustained, was the maintenance by the defendant from the first part of August, 1874, to the commencement of this suit, of an insufficient water course constructed by him under his filling in upon his premises of earth over the before open Franklin Street Brook, and that by his maintenance of such insufficient water course to let the water of said brook flow, as it naturally and otherwise would, when swelled by ordinary rains, so as to obstruct the passage of the water and cause the overflow of the same, and thereby the flooding of the plaintiff's cellar and premises, he has a right to a verdict for such damage as you find he has sustained.

"If you find that the city had the sole control of the sewer at the point in controversy, and that the defendant had nothing to do with it, and had no control over it, the defendant is not liable. But if you find that the defendant constructed the sewer and wrongfully continued it as claimed by the plaintiff, never having been ousted nor interfered with by the city, nor deprived of his right to control it, and never having surrendered such right nor been deprived of it either by his voluntary act or by the action of the city, as the plaintiff claims, then he is liable. You have heard the testimony upon this point, and will determine it for yourselves.

"If you find that the city did have the control of it, and the defendant had nothing to do with it, it would be gross injustice to visit the defendant with damages for what he had no agency in causing.

"But although the city might be liable for the damages complained of in the second count, it does not follow that the defendant is not also liable. This count sounds in tort

Sellick *v.* Hall.

and tort-feasors are jointly and severally liable. If the defendant wrongfully continued that which the plaintiff claims to have been a nuisance, and to have caused him injuries, he is not exempt from liability, although the city participated in the wrong.

"The plaintiff also claims that although the defendant had a perfect right at the time to do that which the plaintiff claims has caused the damage complained of, yet, after he made the conveyance in question to the plaintiff, he had no right to wrongfully continue it to the plaintiff's injury. This claim is correct.

"These questions arise upon the second count. The first count is for a breach of the defendant's agreement at the time of the purchase of him by the plaintiff of the premises now held by the latter, that the cellar of the house was free from water. If you find the allegations contained in this count proved, you will give such damages as you find the plaintiff has proved. You will not include any damages for loss of profits, that being too remote, uncertain and speculative. The plaintiff has not furnished any rule by which they could be measured.

"You will give only the natural and actual damages resulting from a violation or breach of the promise, agreement or contract, if you find any such was made, and has been broken. The court understands the plaintiff's counsel to say, that he does not seriously rely upon the first count, but rests his cause upon the second.

"If you find a verdict for the plaintiff, you will say upon which count you find it."

The jury returned a verdict for the plaintiff, upon the second count only, of $465. The defendant moved for a new trial for error in the charge of the court.

*S. Lucas*, in support of the motion.

1. There is a misjoinder of counts in the plaintiff's declaration which may be taken advantage of by motion in arrest of judgment. 1 Swift Dig., 604. The fact that the verdict was rendered on one count only should not deprive

the defendant of this right. If that were not so a misjoinder of counts could be resorted to as a means of introducing irrelevant testimony. Such would be the result in this case and for which the defendant would be without remedy.

2. The defence in the court below was that the injury complained of was in fact caused by the city, and for this purpose the defendant offered evidence to prove—that before the city took the brook to use as a public sewer, the pipe was ample; the votes of its common council showing its recorded action; the system of sewers emptying into the brook-sewer built at its expense; that the sewers were all in use and the effect of that use; that the city had expended large amounts on the brook itself; that the city was using the brook its whole length as a public sewer; that by its action it had greatly increased the flow of water, and that the sewage had impeded the flow of water, and if the pipe was insufficient to carry off all the water and sewage, it was because of such large increase by the city. In short, the city had in fact taken the brook, and so far as its use for a sewer was concerned, the taking was complete. And it was claimed, on the part of the defendant, if all this was so, that the city by its action took upon itself in law the burden to keep the sewer in repair, while so in use by it, and so requested the court to charge the jury, which the court refused or neglected to do. This claim of the defendant was correct, and the omission of the court an error. *Washburn & Moen Manf. Co.* v. *City of Worcester*, 116 Mass., 458; Shearm. & Redf. on Negligence, § 579.

3. The court not only omitted to state to the jury the duty devolved upon the city by law, as requested by the defendant, but said to them that *if by law the city was liable*, yet the defendant *was also liable*, applying the law relative to joint tort-feasors, which had no application to the case at bar. If the defendant's property had been injured by the same cause, could he not have held the city liable? And how could he do this if he were a joint tort-feasor? If the sewer was rendered insufficient by the city by means of its using it, and the defendant has to pay the damages, what remedy has he if a joint tort-feasor? Such an unjust result, compelling one to

pay for the wrong committed by another, is what the law always, if possible, avoids. Classing the defendant with the city as a joint tort-feasor and declaring him to be severally liable by reason thereof for the acts done by the city, taken in connection with the rest of the charge, gave the jury to understand that if the sewer was insufficient from any cause the defendant was wrongfully maintaining it.

4. The charge of the court was also erroneous in instructing the jury that in law the defendant was liable unless he showed that he was not in possession of the premises and had been *legally* ousted by the city and that the city had virtually exercised control to the *entire* exclusion of the defendant. It is strange if a city by its defective taking coupled with a neglect of duty created by its own acts, can thus subject a man to pay damages when it. is liable to that person for damage caused under the same circumstances. The charge was obscure and calculated to divert the attention of the jury from the point raised at the trial, and deprived the defendant of a meritorious and legal defence.

*A. F. Park,* contra.

1. The charge of the court was correct. The nuisance complained of in the second count was constructed by the defendant on his own premises, as of right he might do, but was continued thereon after he conveyed a portion thereof to the plaintiff, and to the injury of the plaintiff. If the sewering by the city into Franklin Street Brook, six hundred and fifty yards above the defendant's premises, and the doings in connection therewith, should make the city liable with the defendant, such liability would not exempt the defendant from liability in this action. Such is elementary law. 1 Swift Dig., 532; 1 Chitty on Pleading, 86.

2. The defendant had sole control of his sewer that caused the overflow and damage to the plaintiff, and at the time such damage was done; and the jury must have so found under the charge of the court, and he was therefore liable for the continuance of the nuisance. For a man must so use his own as not to injure his neighbor.

3. It is evident from the record that the city never took legal possession of the sewer passing through the defendant's premises and doing the mischief complained of; and from the evidence that it never took actual possession.

4. The judgment should not be arrested on the ground of a misjoinder of the counts. The motion rests on the baldest technicality. If it be an error, it is one that worked the defendant no conceivable injury. The verdict of the jury was not in the least affected by it, and it is reasonably certain that another trial, if granted, must result in a like verdict. The tendency of our statutes has been in disregard of ancient technical pleading, extending the joinder of counts and forms of action; and now a code is adopted, soon to be in force, abolishing all the different forms of action. Besides this the act of 1875 expressly authorizes the joinder of counts in assumpsit and case where they are for the same cause of action. Here it is alleged that both counts are for the same cause of action. And they are so in fact. One is upon a promise that the plaintiff's premises, bought of the defendant, were free from the very overflow of water which in the second count the defendant is charged as wrongfully causing. But however this may be, the counsel for the plaintiff, in opening the argument of the case, stated to the jury that he did not rely upon the first count, but rested his case upon the second; and the court stated this to the jury and directed them, if they found for the plaintiff, to say on which count they found their verdict. They found their verdict only on the second count, so that the case stands the same as if there were but one count, and so there is no reason for arresting the judgment. *Lusk* v. *Hastings*, 19 Wend., 627; *Kightly* v. *Buck*, 2 Maule & Selw., 533; 1 Chitty Pl., 229.

GRANGER, J. The principles of law which govern this case are simple, and easy of application.

The defendant, through whose premises Franklin Street Brook ran, had a perfect right within his own boundaries to make such a channel for the water as he pleased, so long as no other person was injured by reason of it. The law did

not concern itself with the question whether it was the old channel, or an entirely new one, or was an open or covered channel, nor whether, if it was a covered one, it was of one kind rather than another. All that the law required of him was such a channel as would carry safely and without injury to others, the waters of the brook. And by the waters of the brook is meant, not merely the ordinary flow of water, but its flow in times of heavy rain, its increase in volume from any ordinary natural cause.

If the defendant had constructed a covered channel that was insufficient in capacity to allow this natural flow of the water, and which from its incapacity in this respect obstructed the stream, causing it to overflow its banks and to run outside of its channel upon the land of the plaintiff, then the defendant, unless relieved by certain other facts in the case, would clearly be liable for whatever damage was done thereby to the property of the plaintiff. And it makes no difference that the covered channel was constructed by the defendant before the plaintiff purchased his premises, nor that the plaintiff purchased his premises of the defendant. The insufficient channel was a nuisance in its first construction, and its maintenance afterwards was the maintenance of a nuisance, which is equivalent in law to the creation of one; while the plaintiff, of whomsoever he purchased, and whensoever, stands as a property owner whose property the law protects from the nuisance.

But the defendant claimed in the court below, and offered evidence in support of his claim, first, that the city of Norwich had, by proceedings under its charter, taken this channel as a city sewer, and that he had ceased to have any right in or control over it at the time the injury complained of was done; and secondly, that the flow of water in the brook for which the channel was found inadequate, was not the ordinary flow, nor even the volume of water increased by natural causes, but was in large part the flow of water and sewage brought into the brook since the covered channel was made, much of which would not otherwise have found its way there, by public sewers and drains constructed by the city, and over

which he had no control. The defendant contended therefore that, if there was any liability on the part of any one to the plaintiff, for the injury from the obstruction and overflow of the water, the city of Norwich was alone liable.

To the first point made by the defendant, that the city had taken his channel as a public sewer, the plaintiff replies that the proceedings of the city authorities were not regular and complete, so that the channel had never become a legal public sewer. But the question whether the city had taken possession and control of the channel in question is rather one of fact than of law. If the defendant had surrendered the possession and control of it to the city in the belief that the proceedings of the city were regular and complete, and the city had taken such possession and control in that belief, the defendant would clearly no longer be liable for its insufficiency; in other words he would no longer be maintaining a nuisance. The city alone would be responsible for any future damage. In the same way the defendant might have voluntarily surrendered the possession and control to the city, without any compulsory proceedings whatever, or with full knowledge of the irregularity and incompleteness of the legal proceedings. It makes no difference how the possession came into the hands of the city, so long as it was actual and legal. On the other hand, if the legal proceedings had been regular and complete so as to vest in the city a perfect legal right at its own pleasure to take possession of the channel for a public sewer, and it had not in fact taken such possession, then, unless in very peculiar circumstances, the liability for injuries thereafter resulting from the insufficiency of the channel would not have passed from the defendant to the city. It is not like the case of a conveyance of the fee of land by deed. There the possession presumptively follows the title. Here the title that was obtained by the city, if any, was a right to a mere easement, involving no presumptive possession. Suppose it had been an easement of a different kind that the city had taken, as for instance, by laying out a public street across the defendant's premises, taking in the whole of his covered channel. The city would have a perfect right at any time to

enter and work the street. But if this should be delayed, and the property remain undisturbed for several months, the city taking no actual possession, the defendant would clearly be liable for the continuance of the nuisance. The premises would have been entirely within his possession and control as much as before the street was laid out. He could take up the covered channel, or, if there had been none, could now make one—thus for the first time creating the nuisance. The question thus becomes one of actual possession and control, and thus a question for the jury. The legal proceedings were of course important as going to show the reason for taking possession on the part of the city, and to add to the probabilities that it had taken possession, if it were a matter left doubtful by the evidence. And so far as the regularity or completeness of these proceedings was in question, it was of course a matter for the court to pass upon as one of law, but the question of actual possession and control was none the less one of fact for the jury. And the court so treated it, submitting to the jury the question whether the channel had in fact passed out of the control of the defendant and into the control of the city. There is no error in this part of the charge.

As to the second point made by the defendant, it seemed to be admitted that the volume of water, at the time of overflow, was considerably increased by the inflow of water and sewage from city drains and sewers above the premises of the defendant, such drains and sewers having been constructed by the city after the defendant had made his covered channel; but the plaintiff claimed that, independently of this increased flow, the defendant's channel was of insufficient capacity for the natural demands of the brook. This question was of course one of fact for the jury, and evidence was introduced by both parties in support of their respective claims with regard to it. Upon the argument the counsel for the defendant requested the court to charge the jury that the defendant could not be subjected to damages "on account of the channel becoming insufficient by reason of such increase of water and sewage."

The court however, while laying down the law correctly and in accordance with the defendant's claim, with regard to the liability of the city and the non-liability of the defendant, if the city had actually taken possession and control of the defendant's channel as a public sewer, failed to properly discriminate between the damage from the natural flow of the water for which the defendant, if the city had not taken possession, would be liable, and the damage from the increased volume and overflow caused by the inflow from the city drains, for which the city alone would in any event be liable; and so presented the case to the jury that they may have drawn the inference that the defendant, if in control of the channel, was liable for the entire overflow, and for the whole damage done. And this inference might easily have been drawn by them from the judge's instruction that the defendant and the city might be jointly liable. The charge of the court upon this point was as follows:—"Although the city might be liable for the damages complained of in the second count, it does not follow that the defendant is not also liable. This count sounds in tort, and tort-feasors are jointly and severally liable. If the defendant wrongfully continued that which the plaintiff claims to have been a nuisance and to have caused him an injury, he is not exempt from liability although the city participated in the wrong."

The jury can hardly have failed to understand from this that the defendant might be liable for the whole damage, even though a great part of it was caused by the increase of water from the city's drains and sewers; and they may have understood that he was so liable even if his covered channel was entirely adequate to the needs of the natural flow of water and was insufficient merely for this artificial increase over which he had no control.

And the court was clearly wrong in the principle laid down that the defendant and the city might be regarded as joint tort-feasors. Even supposing the defendant to be liable for so much damage as was caused by the inadequacy of his channel for the accommodation of the natural flow of the brook, and the city to be liable for that part of the damage

caused by the artificial increase in the flow, yet they can not upon any principle be regarded as jointly liable. The defendant, if liable at all, is liable because his insufficient channel was a nuisance; the city, if liable, is liable for pouring into the stream a great quantity of water and sewage for which there was no sufficient channel. It made no difference as to the city whether the channel was insufficient from an artificial cause or a natural one. To the city, in this part of the case, the defendant's covered channel was precisely what a narrow gorge in the rocks would have been—ample for the natural flow, wholly insufficient for the artificially increased flow. The torts of the defendant and the city have in law nothing in common. It is not enough to make torts joint that the acts constituting them stand even in immediate juxtaposition, both in time and place. There must be a oneness of act. Two men with their carts may enter upon my land and each dig and carry away my soil. Yet if they are not acting in concert there are two distinct torts and not a joint one, even though they dig from the same pit and at the same time. Here there is not even a juxtaposition of the wrongful acts, the one being the maintenance of an insufficient channel by the defendant, the other the letting in of an increased volume of water and sewage from artificial drains and sewers. The fact that the effects of their several wrongful acts are produced at the same time and place can not affect the question.

It may be very difficult for a jury to determine just how much damage the defendant is liable for and how much should be left for the city to answer for; but this is no more difficult of ascertainment than many questions which juries are called upon to decide. They must use their best judgment, and make their result, if not an absolutely accurate one, an approximation to accuracy. And this is the best that human tribunals can do in many cases. If the plaintiff is entitled to damages and the defendant liable for them, the one is not to be denied all damages, nor the other loaded with damages to which he is not legally liable, simply because the exact ascertainment of the proper amount is a matter of practical difficulty.

Sellick *v*. Hall.

The defendant has added to his motion for a new trial a motion in arrest of judgment, on the ground of a misjoinder of counts. The first count is for a breach of contract, the second for a tort. It is clear that counts in contract and in tort will not lie together at common law, and the act of 1875 which authorizes a joinder of them, limits it to cases where the counts are for the same cause of action. Here they are clearly not for the same cause of action, and it does not help the matter that they are alleged to be so. And a misjoinder of counts can be taken advantage of by a motion in arrest of judgment. *Phelps* v. *Hurd*, 31 Conn., 445. We think however that the declaration that can be held insufficient for such a cause on a motion in arrest, must be one on which the judgment sought to be arrested is based. Here the jury found a verdict for the plaintiff upon the second count only. This was virtually a verdict for the defendant on the first count. Indeed it appears that the first count was not relied upon by the plaintiff on the trial although not formally withdrawn. This perhaps would not be sufficient of itself, and clearly would not if the jury had rendered a general verdict. We rest our opinion wholly on the fact that this count does not in any manner subtend the judgment. There would seem to be no good reason why in such a case it should carry an infirmity into the judgment. For all practical purposes it has disappeared. So far as the judgment is concerned, it is as if this count had never existed. This view is sustained by the authorities. 1 Chitty Pl., 229; *Kightly* v. *Birch*, 2 Maule & Selw., 533; *Eddowes* v. *Hopkins*, 1 Doug., 376; *Williams* v. *Breedon*, 1 Bos. & Pul., 330; *Hancock* v. *Haywood*, 3 T. R., 433; *Tate* v. *Whiting*, 11 Mod., 196; *Brill* v. *Neale*, 1 Chitty R., 619; *Harris* v. *Davis*, id., 626, note; *Lusk* v. *Hastings*, 19 Wend., 629.

A new trial must be granted for the errors in the charge of the court.

n this opinion the other judges concurred.