[Civ. No. 2967. Third Appellate District.—October 19, 1925.]

# W. C. RAMSEY, Appellant, v. E. POWERS et al., Respondents.

[1] JUDGMENTS—NONSUIT—RES ADJUDICATA—ESTOPPEL.—The doctrine of *res adjudicata,* as a plea in estoppel, is not available as against a judgment entered upon an order granting a nonsuit.

[2] CONVERSION — PLEADING — EVIDENCE — PARTIES — MISJOINDER — NONSUIT.—In an action for damages for the alleged seizure and conversion by defendants of a certain quantity of tomatoes and a certain quantity of corn, where upon the face of the complaint there is therein alleged a single trespass or tort, which it is alleged was committed by the joint act of the two defendants, and there is absolutely no evidence tending to show that the defendants ever maintained with or between each other any business relations of any kind or character, or that the two jointly acted in the transactions involved in the dispute, but to the contrary, the evidence conduces to the conclusion that the act of taking the tomatoes and the act of taking the corn constituted two different, distinct and independent transactions carried out by two different persons acting independently of each other, there is not only a misjoinder of parties defendants, but a misjoinder of causes of action, and defendants' motions for a nonsuit are properly granted.

[3] TORT—PARTIES—PLEADING—EVIDENCE—JUDGMENT.—Where a tort has been committed and two or more parties are alleged by the plaintiff to have jointly committed the same and the evidence shows that one of the defendants only had committed the wrong or the damage, it is the duty of the trial court to hold the offending defendant liable and dismiss the case as to the others.

---

(1) 34 **C. J.,** p. 781, n. 34.   (2) 1 **C. J.,** p. 1102, n. 71, 73, p. 1103, n. 75; 11 **C. J.,** p. 613, n. 27; 31 **Cyc.,** p. 708, n. 73.   (3) 38 **Cyc.,** p. 492, n. 30.

APPEAL from a judgment of the Superior Court of San Joaquin County. C. W. Miller, Judge. Affirmed.

The facts are stated in the opinion of the court.

---

1. Judgment entered upon an order granting a nonsuit as *res adjudicata,* note, 49 Am. St. Rep. 8̥29, 831. See, also, 15 Cal. Jur. 131; 15 R. C. L. 984.

2. See 20 Cal. Jur. 510.

3. See 24 Cal. Jur. 598.

Frank W. Sawyer, A. H. Carpenter and Sawyer & Sawyer for Appellant.

Nutter, Hancock & Rutherford, Pillsbury, Madison & Sutro, Charles A. Ruggles and M. D. L. Fuller for Respondents.

HART, J.—This is an action for damages for the alleged seizure and conversion by defendants of a certain quantity of tomatoes and a certain quantity of Egyptian corn.

The action is in conversion, and the complaint, among other facts therein stated, alleges:

"That at the time of the commencement of this action and for a long time prior thereto the plaintiff was the owner of and entitled to the possession of all the following described personal property, namely: 196,605 pounds of tomatoes and 102,040 pounds of Egyptian corn which were raised on plaintiff's ranch in said San Joaquin County in the year 1918.

"That on or about the —— day of October, 1918, while plaintiff was so the owner of and entitled to the possession of all the aforesaid tomatoes and Egyptian corn, the defendants entered upon plaintiff's said premises and without plaintiff's consent or knowledge, wrongfully and unlawfully seized, took and carried away all of the aforesaid personal property and converted the same to their own use, whereby plaintiff was damaged by such unlawful taking and conversion on the part of said defendants in the sum of forty-seven hundred seventy-two and 15/100 dollars, which was the market value of said tomatoes and Egyptian corn at the time of said conversion."

The defendants were and are represented by different attorneys. The defendant corporation demurred to the complaint on the general ground and also on certain special grounds, among which was that of misjoinder of parties defendants, and that "several causes of action have been improperly united, or not separately stated." (Sec. 430, subd. 5, Code Civ. Proc.)

The defendant Powers demurred to the complaint on the general ground. The demurrer in each instance was disallowed, and within due time the defendants filed separate answers, in both of which the material allegations of the

complaint were specifically denied. Each of the answers also sets up several special defenses, which will hereinafter be noticed.

Upon the close of plaintiff's case, the defendants made separate motions for a nonsuit, the same were granted and the action as to each of the defendants was dismissed.

The cause is before us on appeal by the plaintiff from the judgment entered upon the orders granting said motions.

A case growing out of precisely the same transactions has previously been before and decided by this court, the judgment of nonsuit from which the appeal therein was prosecuted by the plaintiff there and here having been affirmed. (*Ramsey* v. *California Packing Corp. et al.,* 51 Cal. App. 517 [201 Pac. 481].)

The facts of the transactions from which this action arose were gone into more extendedly or in greater detail at the trial of the former action than in the trial of the present action. It appears from the present record, as it was made to appear by the record in the former action, that the plaintiff was the owner of a certain ranch, situated in San Joaquin County, and consisting of 320 acres; that, on the first day of November, 1917, he leased the whole of said ranch to one W. T. Kim and one C. H. Hahn, for the term of one year; that, on the eighteenth day of March, 1918, said Kim and Hahn executed and delivered to the plaintiff their promissory notes for the sum of $3,000 and $2,000, respectively, and at the same time as security for the payment of said notes, gave to plaintiff a mortgage on all crops of sugar-beets, tomatoes, beans, Egyptian corn and similar products "being, standing and growing" on the demised land, and which is described in the mortgage. It further appears that Kim and Hahn first attempted to grow sugar-beets on the land. In January, 1918, they planted the entire acreage of the land to sugar-beets, but, as Kim stated, they "blew out." Shortly thereafter they again planted sugar-beets in the land, with the same result. In May, 1918, they put the land in tomatoes and Egyptian corn. When these crops had matured, Kim and Hahn sold the tomatoes to the defendant, California Packing Corporation, and the corn to the defendant Powers. They (Kim and Hahn), upon effecting those sales, conveyed the tomatoes

to Manteca, a railroad station not far distant from the land, and there put them aboard a car and consigned them to the defendant corporation, at its packing plant. The corn, by request of Powers, was removed from the land and deposited on "high land" near a road, a short distance from the Ramsey ranch, at which point Powers took possession of the corn and by means of trucks carried it away.

The above comprehends a statement of the general facts.

The only testimony in this case directly bearing upon the transactions constituting the basis of this action was that contained in a deposition given by Kim. There was some other testimony received, but it has no direct relation to the transactions herein involved and need not, therefore, be here presented.

The nonsuit here was based on substantially the same grounds as those upon which the nonsuit in the former action was allowed, and many, if not all, the legal points herein urged upon us in support of the appeal were presented and considered in the appeal from the judgment of nonsuit entered in the former action. There were, however, two other grounds added in this case to those presented in the former case, to wit: 1. That there is a misjoinder of parties defendants; 2. That arising upon the pleas of estoppel interposed by defendants as against the right of the plaintiff to maintain this action, in that the judgment in the former action is *res adjudicata.* [1] *In limine,* it may as well be stated that the doctrine of *res adjudicata,* as a plea in estoppel, is not available as against a judgment entered upon an order granting a nonsuit. "It is fundamental that the doctrine of *res adjudicata* has no application to judgments of nonsuit." (*Merritt* v. *Campbell,* 47 Cal. 543; *City and County of San Francisco* v. *Brown,* 153 Cal. 644, 648 [96 Pac. 281].)

On the appeal from the judgment entered in the former action, these points, among others, were raised and considered: 1. That the mortgage in question there and here does not cover or include the crops of tomatoes and Egyptian corn purchased by the defendants; 2. That the mortgage, the execution of which was acknowledged by the mortgagors before one Emerson, as a notary public, was, as to third parties, invalid, because said Emerson was a

partner of the plaintiff in the ownership of the mortgage and the notes it was given to secure. As to what was said in the opinion disposing of the appeal in the former action upon those propositions, the supreme court, in denying a hearing there, expressly declined to state its views. (*Ramsey* v. *California Packing Corp. et al.,* 51 Cal. App. 517 [201 Pac. 481].) Clearly what was said in that opinion with regard to the scope of the mortgage was *dictum.* As to the other point, the supreme court in effect held that the judgment of this court could be sustained without regard to whether the mortgage covered the crops in question. But neither of these propositions need be considered here, since we are convinced that the nonsuit was properly granted upon the ground that there is a misjoinder of parties defendants.

[2] Upon the face of the complaint there is therein alleged a single trespass or tort, which it is alleged was committed by the joint act of the two defendants. It was incumbent upon the plaintiff, to make his case as his pleading submitted it, to prove that the taking of the tomatoes and the corn constituted a single act of trespass and that it was done jointly or in concert by the defendants. This the plaintiff failed to do. There is absolutely no evidence tending to show that the defendants ever maintained with or between each other any business relations of any kind or character. There is not the slightest evidence that the two jointly acted in the transactions involved in this dispute. To the contrary, the evidence conduces to the conclusion that the act of taking the tomatoes and the act of taking the corn constituted two different, distinct and independent transactions carried out by two different persons acting independently of each other. Kim testified that the original agreement by him and Hahn with the Packing Corporation for the purchase of the tomatoes was made in the month of December, 1917; that the negotiations leading to said agreement were conducted on behalf of the Corporation by a Mr. Davis, the "buyer" of the said defendant; that, through said Davis, the agreement with that Corporation was that the latter was to provide the financial means necessary for the planting, cultivation, and harvesting of the tomatoes, and that Kim and Hahn were to sell the tomatoes to the Corporation at the rate of $20 per

74 Cal. App.—40

ton; that the delivery of the tomatoes to the Corporation was made before the corn was sold and delivered to defendant Powers, and that such delivery was made by Kim and Hahn at the railroad station at Manteca in pursuance of the written memorandum of the agreement between them. Kim further testified:

"Q. Did Mr. Davis or California Packing Corporation or anybody representing or connected with California Packing Corporation ever talk to you about corn? A. No. Q. Never had anything to do with corn? A. No. Q. Nothing at all? A. No. Q. Did they ever take any corn off that place, off the Ramsey place, did Mr. Davis or California Packing Corporation ever touch any corn or buy any corn or take any corn off the Ramsey place? A. No. Q. Not a grain? A. No, just the tomato. Q. They bought tomato from both ranches? A. Yes. Q. Baccieleri Ranch, other ranch? A. Yes. Q. Forty acres and eighty acres? A. About 70 to 80. Q. But never touch any corn? A. No. Q. Did Mr. Powers ever talk to you about tomatoes? A. No. Q. Did Mr. Powers ever buy any tomatoes from you? A. No. Q. Did you ever give any tomatoes, or deliver any tomatoes, to Mr. Powers? A. No. Q. Off the Ramsey place? A. No. Q. In 1918? A. No. Q. Or at any other time? A. No. Q. California Packing Corporation and Mr. Powers never come together, to do anything? A. No. Q. Never saw them together? A. No. Q. Any time? A. No."

The transaction resulting in the sale of the corn to Powers, so Kim testified, took place after the tomatoes were sold to the Corporation, one Hooper, buyer for Powers, representing or acting for the latter therein.

The above testimony stands uncontradicted in the record, there having been introduced, as before stated, no other testimony than that of Kim directly relating to the two transactions. And thus it is clear that, as before declared, assuming that the sale and the removal from the land of the tomatoes and the corn were tortious and in violation of the rights of the plaintiff under his mortgage, the plaintiff not only failed to show that the defendants were joint tort-feasors, but that the evidence affirmatively shows that they acted in two entirely different transactions

and independently of each other, or, in other words, that there was, in the carrying out of the two transactions, no concert of purpose between them. It follows that there is here not only a misjoinder of parties defendants, but a misjoinder of causes of action. For these reasons alone, if for no other, there was no alternative left to the trial court but to grant the motion for a nonsuit. The authorities are quite uniform upon this proposition.

In *Miller* v. *Highland Ditch Co.*, 87 Cal. 430 [22 Am. St. Rep. 254, 25 Pac. 550], the action was for damage to plaintiff's land alleged to have been caused by the acts of defendants in maintaining ditches whereby "foreign waters" were diverted into and through the mountain canyon in which said land was situated, with the result that the said land was inundated and as a consequence seriously injured. The complaint proceeded upon the theory that the three defendants were joint tort-feasors, but the evidence disclosed that they maintained, independently of each other or without acting in unison in such maintenance, three different ditches, all, however, contributing to the damage complained of. The supreme court, in disposing of the case on appeal, and speaking through the late learned Justice McFarland, said:

"It is clear that the rule as established by the general authorities is, that an action at law for damages cannot be maintained against several defendants jointly, when each acted independently of the others, and there was no concert or unity of design between them. It is held that in such a case the tort of each defendant was several when committed, and that it does not become joint because afterwards its consequences united with the consequences of several other torts committed by other persons. If it were otherwise, say the authorities, one defendant, however little he might have contributed to the injury, would be liable for all the damage caused by the wrongful acts of all the other defendants, and he would have no remedy against the latter, because no contribution can be enforced between tort-feasors. (*Chipman* v. *Palmer*, 77 N. Y. 51 [33 Am. Rep. 566]; *Little Schuykill Nav. Co.* v. *Richards*, 57 Pa. 182 (142) [98 Am. Dec. 209]; *Sellick* v. *Hall*, 47 Conn. 260; Gould on Waters, sec. 222; Pomeroy on Remedies, secs. 307,

308.) The case of *Blaisdell* v. *Stephens,* 14 Nev. 17 [33 Am. Rep. 523], is very similar to the case at bar, and involved the very point under discussion. In that case several defendants were sued 'for wrongfully flowing waste water from their lands, to the injury of plaintiff's ditch, and for an injunction to restrain such wrongful flowing of waste water.' It appeared, however, that the defendants 'own, occupy, and irrigate separate and distinct tracts or parcels of land, each in his own right'; and they moved for a nonsuit upon the ground that it did not appear that the injury complained of 'was the result of the joint or concurrent act of defendants.' The trial court overruled the motion, and, on appeal, the supreme court of Nevada held that the nonsuit should have been granted, and said in its opinion: 'The general principle is well settled that where two or more parties act, each for himself, in producing a result injurious to plaintiff, they cannot be held jointly liable for the acts of each other.' "

In the case of *Livesay* v. *First Nat. Bank,* 36 Colo. 526 [6 L. R. A. (N. S.) 598, 86 Pac. 102], the Colorado supreme court announced the same doctrine, and the case of *Miller* v. *Highland Ditch Co., supra,* among other cases, is cited. In the Colorado case the action was against several defendants, acting independently of each other, for tortiously taking certain goods from plaintiffs. The court said, at page 601:

"The question then is: Was there sufficient evidence to warrant the court in submitting to the jury the issue of joint liability by reason of the joint acts of the defendants? It is admitted that the action was against the defendants as joint tort feasors. A failure to prove the joint liability of all the defendants was a failure to prove the cause of action alleged. Proof of several separate and distinct liens or trespasses was fatal to the cause of action, and warranted the court in directing a verdict. . . . The principle is the same whether the question is *ex contractu* or *ex delicto.*" (See, also, Pomeroy, Remedies and Remedial Rights, 2d ed., p. 265; *Mau* v. *Stoner,* 15 Wyo. 109 [87 Pac. 434, 440, 49 Pac 466]; *Bonte* v. *Postel,* 109 Ky. 64 [51 L. R. A. 187, 189, 58 S. W. 536]; *Farley* v. *Crystal Coal & Coke Co. et al.,* 85 W. Va. 595 [9 A. L. R. 933, 102 S. E. 265].)

[3] It may be suggested that where a tort has been committed and two or more parties are alleged by the plaintiff to have jointly committed the same and the evidence shows that one of the defendants only had committed the wrong or the damage, then it would be the duty of the trial court to hold the offending defendant liable and dismiss the case as to the others. That is not this case, however. Here, as seen, we have two different torts, neither of which was jointly committed by the defendants, but each of which, if committed at all, was by the defendants acting independently of each other or for himself, or, in other words, the one defendant taking no part in the commission of the alleged tortious act committed by the other.

For the reasons stated, we find it to be our duty to affirm the judgment and it is so ordered.

Finch, P. J., and Plummer, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on December 16, 1925.