[Civ. No. 12230. First Dist., Div. One. Feb. 9, 1943.]

ELLA PERKINS, as Administratrix, etc., Appellant, v. F. BRUCE MAIDEN, Respondent.

Edw. R. Solinsky for Appellant.

George M. Naus for Respondent.

WARD, J.—Plaintiff, the administratrix of the estate of F. W. Perkins, her deceased husband, brought this action to recover the sum of $5,000 and interest, alleging that on October 7, 1920, this sum had been delivered to defendant by F. W. Perkins upon the understanding and agreement that it was to be loaned out and invested by defendant at interest for the benefit and profit of Perkins, and that defendant would keep said money invested and thereafter, on demand, return the principal and accrued interest; that defendant accepted the money pursuant to and in accordance with said understanding and agreement, and thereafter invested and loaned it at interest, and from that time up to January 1, 1935, paid monthly or bi-monthly to Perkins the interest thereon earned and collected upon such investments and loans; that after the death of Perkins on January 1, 1935, defendant continued to make such payments to plaintiff, as the surviving widow of Perkins, until about February 1, 1936, when he discontinued them and refused to make any further payment.

Defendant in his answer admitted the delivery to him of the $5,000, but denied that it was upon the understanding and agreement alleged. The cause went to trial upon this issue and resulted in a judgment for defendant. A motion by plaintiff for a new trial was denied and she has taken this appeal from the judgment.

Defendant is the son-in-law of F. W. Perkins, deceased, having married the latter's daughter Winte. The couple separated in the year 1933 and were divorced in 1938. Since the death of Mr. Perkins, his widow has resided with their daughter, Mrs. Maiden.

At the trial F. Bruce Maiden, the defendant, was the only witness as to the transaction between Perkins, deceased, and himself. It is admitted that a note for the sum of $5,000 bearing interest at the rate of 12 per cent per annum, and due one day after date, was given by him to Perkins on receipt of the money by him. It also appears from the evidence that Maiden was a man of ample means and large earning capacity; that he invested part of his fortune in short term loans at high interest. The nature of the transaction between him and Perkins is best described by the following testimony: "Q. State, Mr. Maiden, the substance of the conversation, if any, between you and Mr. Perkins at the time of or preceding the delivery of this note and with respect to the $5,000? . . . A. Mr. Perkins came to me and said that he needed very badly to receive some income from his money, that he had sold out everything he had and he was living out of his pocket, and he asked me to find an investment or to lend his money. I told Mr. Perkins I would try to find an investment for him. The time passed and I was unable to find one. . . . He came to me one day and said he felt it was difficult to either make a loan of $5,000 or buy a place for exactly $5,000, and that he knew I handled large transactions and that he would like to have me borrow the money and do as I pleased with the money and pay him what I could afford to pay him for the money. I asked him what amount of money it was necessary for him to live on. He told me approximately $75.00 a month but he might get by on $50.00 a month, he would at least try. I told him I would borrow the money at $50.00 a month and if he found out later he could not get by I would do something else about it. And for approximately the first year the $50.00 a month was paid, which was 12 per cent.''

At that time the payment to Perkins was increased to $75 a month under the circumstances shown by the following testimony of the defendant. In reply to the question: " . . . at or about the time of the change of the payments from $50.00 to $75.00 a month was there or not any conversations between you and Mr. Perkins regarding it?'', the

witness answered: "He came to me and said he found it difficult to live on the $50.00 a month which he was receiving, and he had told me at the time the loan was made that he needed $75.00 a month to live on but he would try to get by with $50.00, and he at that particular time needed more money and what could I do about it? And I told him I would pay $25.00 a month on account of the principal. He indicated to me that this was a temporary thing, that he didn't expect it to last, that he was in a spot then and needed more money, and that probably it would not run very long, and I told him I would pay him $25.00 a month more on the principal, with the $50.00 which was 12 per cent, and that was our arrangement."

Mr. Perkins' expected increase of funds apparently did not materialize and the increased monthly payments continued until reduced for other reasons.

About four years after the making of the note a renewal note was executed. The facts and circumstances of the renewal were testified to by both the defendant and Mrs. Olinda Ingham, for many years his secretary and cashier. To the question "Now what, if anything, occurred at that time with respect to a renewal of the note, in the presence of Mr. Perkins, of course?", the latter replied: "Mr. Maiden explained that Mr. Perkins was dissatisfied with Mr. Maiden's carelessness in making the payments and he, Mr. Maiden, therefore decided to turn it over to me and instructed me to be very prompt in making the payments and stated to get everything shipshape, that the note was to be renewed at that time, and I cannot remember whether I actually drew the note or whether it was a note on a printed form which Mr. Maiden filled in, but I do definitely remember those circumstances."

The monthly payments of $75 were kept up until about January 1, 1934; from that time to the date of Perkins' death on January 1, 1935, $60 a month was paid; thereafter, until October of that year payments of $50 a month were made to the widow, the plaintiff herein, following which three payments of $25 each were made her in November and December, 1935, and January, 1936, after which time all payments ceased.

The testimony of the defendant regarding the making of the original note, and also his testimony and that of Mrs. Ingham relative to the making of the renewal note, was

objected to by the plaintiff on various grounds, namely, that the testimony was irrelevant, incompetent and immaterial, hearsay, self-serving, and particularly that it was an attempt to contradict defendant's own admissions and declarations that the $5,000 delivered to him was upon the understanding and agreement alleged in the complaint, which admissions and declarations he was estopped to deny. These objections were overruled, and a subsequent motion to strike the testimony denied.

The purported admissions and declarations referred to in the above stated objections were contained in correspondence offered in evidence by the plaintiff. On January 31, 1934, the defendant wrote to Mr. Perkins as follows: "Dear Mr. Perkins: For some time past I have had difficulty in maintaining the interest rate on your money. As you know in times past, when things were active, money could be used to greater advantage. Money is harder to get now than ever, still inactivity has reduced interest rates everywhere. I have, therefore, had to reduce the interest to $60.00 per month in place of $75.00 per month, as formerly. This will make your check on February 1, 1934, $120.00 in place of $150.00. Also in the future it will be more convenient to pay the $60.00 each month instead of every other month. If this is agreeable to you, kindly send your check book each month to Mrs. Ingham and she will take care of the matter as usual."

On November 20, 1935, Mrs. Ingham, in her capacity as secretary and cashier of the defendant, wrote to Mrs. Maiden (defendant's wife, at the time separated and living with her mother) the following letter: "Dear Mrs. Maiden: In reply to Mrs. Perkins' letter, Mr. Maiden directed me to deposit in her account $25.00, duplicate deposit slip for which is herewith. Mr. Maiden asked me to inform you that the $75.00 per month which was paid to the Perkins account until January 1, 1934, the $60.00 per month which was paid until January 1, 1935, and the $50.00 per month which was paid from then until now has provided six per cent interest on the Five Thousand Dollars placed with Mr. Maiden; and in addition to this interest, has provided approximately Twelve Thousand Dollars. This means that the Five Thousand Dollars has been repaid twice over with Two Thousand Dollars to spare. Mr. Maiden has instructed me to deposit

$25.00 each month in Mrs. Perkins' account until he gives me further orders.''

This letter was written at the direction of the defendant and was in reply to one received by Mrs. Ingham from Mrs. Perkins in which she stated: ''As I have not received my interest this month from Mr. Maiden, I thought perhaps you had forgotten it. Would it be too much trouble for you to send it soon, as I am very much in need of it. Thanks for all your favors to me.''

The trial court, as stated, gave judgment in defendant's favor after making findings sustaining his contentions.

On her appeal the plaintiff urges the following points: (1) That, contrary to the trial court's finding number 2, the evidence establishes a continuing express trust rather than a loan; (2) That the evidence is insufficient to support finding 3, to the effect that the long series of payments by defendant had extinguished both principal and interest of the note and its renewal; (3) That the evidence is insufficient to support finding 5, to the effect that the defendant does not hold, nor has he ever held, any money in trust for plaintiff's deceased husband; (4) That the court erred in admitting certain evidence and denying the motion to strike it, —being the evidence as to the circumstances of the making of the notes in question already detailed.

■ Irrespective of the form in which the contention of appellant is stated, reduced to its simplest terms the principal issue is whether or not the evidence sustains the finding upon which the judgment is based—that the $5,000 was received by defendant from F. W. Perkins as a loan, and not in trust to invest and pay Perkins the income derived therefrom.

Appellant's argument at the trial was that as between parties or their successors, the truth of facts recited in written instruments will be conclusively presumed, and equity requires that whenever a party to a transaction by his own declaration or omission deliberately leads another to believe a thing to be true, he cannot in litigation arising upon such declaration or omission be permitted to falsify it. (Code Civ. Proc., § 1962, subds. 2 and 3.)

In an attempt to maintain the contention that the proofs establish a continuing trust rather than a loan, appellant is forced to rely entirely upon language from the above quoted letters of January 31, 1934, and November 20, 1935, respectively, wherein defendant in referring to his difficulty

in maintaining the interest rate uses the expression "on your money," and his secretary refers to the $5,000 as being "placed with Mr. Maiden."

The provisions of the above subdivisions do not preclude a party from showing the true significance of the declaration or omission. Under such circumstances, if an ambiguity appears in the language used resort may be had to parol evidence, and the court will adopt the interpretation which to it appears the more reasonable. The question here is: Did the portions of the letters relied upon by appellant as matter of law create a trust relationship. The expression "your money" and the reference to the $5,000 as being "placed with Mr. Maiden" are consistent with the existence of the trust relationship claim; on the other hand, they are when used colloquially quite consistent with the existence of a loan. Certainly the trial court could not, on the strength of two or three isolated, ambiguous expressions, immediately conclude that they established the existence of a trust, and deny to the defendant the right to introduce evidence to show that his contention was in fact the true nature of the transaction. The term "your money" is of course technically incorrect when referring to money that has been loaned to another, but being of quite common usage in such a transaction they afford little if any basis for a finding of the court that they conclusively prove the person employing them is a trustee of the money referred to.

Under the circumstances the trial court had a right and duty to resort to parol evidence, and after its admission correctly denied the motion to strike such evidence. When the parol evidence is considered, there seems to be little doubt that the defendant's evidence was the stronger and more satisfactory, and abundantly sustains the finding that defendant has not held, nor does he hold, any sum of money in trust for F. W. Perkins.

This is the second appeal. The former (*Perkins* v. *Maiden*, 41 Cal.App.2d 243 [106 P.2d 232]) was from a judgment entered for defendant after an order of nonsuit. It was held that plaintiff had made out a prima facie case and that the order of nonsuit was improper.

A motion for a nonsuit is in effect a demurrer to the sufficiency of the evidence in that it admits the truth of the facts for the purpose of considering the motion, but denies that as a matter of law the evidence is sufficient to support

plaintiff's claim. It is possible that a motion for nonsuit may be denied and without further evidence judgment be entered for defendant. The reason therefor is that on the motion for nonsuit the truthfulness of the evidence must be assumed; whereas in a determination on the merits the court considers its probative value, and may decide that plaintiff's evidence is not trustworthy and render a judgment free from any claim of res judicata in a previous trial. It has also been held that, after granting of a nonsuit and a reversal of the order on appeal, upon a subsequent trial the doctrine of the law of the case does not apply. (*Ramsey* v. *Powers,* 74 Cal.App. 621 [241 P. 567]; *Biurrun* v. *Elizalde,* 75 Cal.App. 44 [242 P. 109].)

The court found: "During the first year subsequent to said 7th day of October, 1920, defendant paid to said F. W. Perkins interest at the rate of $50 a month upon said note; and beginning on the 7th day of October, 1921, and running continuously to the 1st day of January, 1934, defendant made payments of $75 each and every month to be applied first to accrued interest and the remainder to the principal sum due; and from the 1st day of January, 1934, to the 1st day of January, 1935, defendant paid $60 each and every month to be applied first to accrued interest and the remainder to the principal sum due; and after the death of said F. W. Perkins on January 1, 1935, to and including the month of October, 1935, defendant paid to the present plaintiff, Ella Perkins, as Administratrix of the Estate of F. W. Perkins, deceased, $50 each and every month to be applied first to accrued interest and the remainder to the principal sum due; thereafter defendant paid to the present plaintiff, Ella Perkins, as Administratrix of the Estate of F. W. Perkins, deceased, the sum of $25 in November and December of 1935 and January of 1936. The Court finds that the whole of the principal and interest due or owing under said note has been fully paid."

Appellant contends that this finding is "contradictory, absurd, untrue in the light of the evidence and cannot stand."

The portion of the finding to the effect that the "whole of the principal and interest due or owing under said note has been fully paid" is correct, but any inference that might be drawn that the note was not fully paid until 1936 is incorrect. From a computation prepared by appellant and presented on appeal, it appears that the amount in full was

paid in installments of principal and interest at the rate of 12 per cent prior to January, 1931. If the computation is correct, and it has not been challenged, then all payments in recent years might be classified as gratuitous. If there is any inference to be drawn from this fact, that the transaction was in the nature of a trust rather than a straight loan, it was a question to be considered by the trial court. Otherwise we fail to understand how plaintiff is injured by the receipt of approximately $4,000 in excess of the principal and interest mentioned in the note. The continuance of payments may be explained by the fact that they were made by the defendant to his father-in-law, and upon his death to the mother-in-law, and their ultimate discontinuance by the fact that this relationship was interrupted, and indeed ended, by divorce.

The judgment is affirmed.

Peters, P. J., and Knight, J., concurred.

A petition for a rehearing was denied March 11, 1943, and appellant's petition for a hearing by the Supreme Court was denied April 1, 1943.