[Civ. No. 2976. Third Appellate District.—November 3, 1925.]

VICENTE BIURRUN, Appellant, v. EULALIO ELI-
ZALDE et al., Defendants; A. G. RAMIREZ, Re-
spondent.

[1] MONEY HAD AND RECEIVED—RECEIPT IN TRUST—DIVERSION TO UN-
AUTHORIZED PURPOSE.—Where one receives money in trust to be
paid to another who is the owner thereof, the latter may hold
the trustee accountable for the money so received, even though
the latter has appropriated it to the payment of the debts
of the trustor, or otherwise diverted its use to a purpose other
than that for which it was delivered to him.

[2] ID.—POSSESSION FOR ANOTHER—RIGHT OF ACTION BY OWNER.—
If one obtains possession of the money or other property of
another and retains it in his possession, the owner of the money
or other property may proceed against and maintain an action
against the party having possession of the money or other prop-
erty for the recovery of the same, whenever the owner is in
law entitled to such possession.

[3] ID.—ISSUES OF FACT—EVIDENCE—PROVINCE OF COURT OR JURY—
DISCRETION—APPEAL—PRESUMPTION.—The power vested in the jury
or trial court to accept as true or reject as untrue the testimony
given before it by any of the witnesses may not be arbitrarily or
capriciously exercised, but only in the exercise of a sound dis-
cretion upon a consideration of the testimony by the tests alone
available to the triers of issues of fact at *nisi prius;* and where
there is no showing, or nothing on the face of the record to
indicate, that the triers of the fact have arbitrarily or without
just reason accepted or rejected particular testimony, the presump-
tion must be indulged on appeal that there has been no ar-
bitrary rejection or acceptance of any testimony, but that the
triers have, for sufficient legal reasons, accepted as true the
testimony with which the final result arrived at or the judg-
ment harmonizes and rejected as of no probative value testimony
which tended to lead to an opposite conclusion.

[4] ID.—FINDINGS IN GENERAL LANGUAGE—IMPLIED FINDINGS.—Find-
ings phrased in general language or which are substantially in
the language of one of the pleadings, whose averments, whether
affirmative or negative, are not themselves specific, if otherwise
sufficient, always imply the finding of every fact vital and essen-
tial to the support of the judgment and the finding that any

2. See 17 Cal. Jur. 611; 2 R. C. L. 778.
3. See 10 Cal. Jur. 1145; 2 Cal. Jur. 936; 28 R. C. L. 661.
4. See 24 Cal. Jur. 973.

fact which would not support the judgment and to which some of the witnesses had testified in the trial was not true.

[5] ID.—NONSUIT—ESTOPPEL—LAW OF THE CASE.—A judgment on nonsuit, whether by a trial court or a court of review, cannot operate as an estoppel upon the issues of fact; and the doctrine of the law of the case does not apply on the retrial of a case, after reversal on appeal of a judgment of nonsuit.

[6] ID.—SUFFICIENCY OF GENERAL FINDINGS.—While specific findings are always to be preferred to general findings, the latter are sufficient where they follow the averments or denials of the complaint or answer and so decide the issue or issues submitted by the pleadings.

[7] ID.—GENERAL DENIAL—ISSUES—FINDINGS IN NEGATIVE LANGUAGE —APPEAL.—In an action for money had and received, where no fraud or mistake or *mala fides* in the handling of trust funds is or are alleged, the defendant is required merely to set up the general issue or a general denial, thus raising the issue whether he received and holds in his possession moneys belonging to plaintiff, and findings in the negative language of the answer are sufficiently definite and clear as not to require an investigation on review to determine what has been decided.

[8] ID.—IMPEACHMENT OF TESTIMONY—PRIOR WRITTEN STATEMENT— SUFFICIENCY OF FOUNDATION.—In this action against two defendants for money had and received, in which one of the defendants admitted he received the money, but alleged and testified he paid it to his codefendant with instructions to pay same to plaintiff, the trial court did not err in admitting in evidence, as in impeachment of said testimony, a prior statement signed by said defendant, and which was in conflict therewith, wherein said defendant stated that he remembered the time and place at which he signed the statement and that the signature to the statement was his, declaring however that he did not understand the purport thereof when he signed it, and said codefendant testified that, prior to the signing thereof by the former, he explained to him in his own language the real contents of the statement.

---

(1) 39 Cyc., p. 514, n. 70.    (2) 41 C. J., p. 29, n. 7.    (3) 4 C. J., p. 762, n. 31 New; 38 Cyc., p. 1945, n. 35, 36, p. 1985, n. 79.    (4) 38 Cyc., p. 1984, n. 78.    (5) 4 C. J., p. 1218, n. 17; 34 C. J., p. 781, n. 34; 38 Cyc., p. 1551, n. 59, 61, 62.    (6) 38 Cyc., p. 1976, n. 34, 35.    (7) 38 Cyc., p. 1974, n. 23, p. 1976, n. 34, p. 1981, n. 57, 58, 59.    (8) 4 C. J., p. 1072, n. 41; 40 Cyc., p. 2725, n. 39, p. 2742, n. 37.

5. See 24 Cal. Jur. 973, 984.
6. See 27 Cal. Jur. 156.

APPEAL from a judgment of the Superior Court of Yuba County. Eugene P. McDaniel, Judge. Affirmed.

The facts are stated in the opinion of the court.

W. E. Davies and Russell W. Cantrell for Appellant.

W. P. Rich for Respondent.

HART, J.—The complaint alleges that defendants, within two years immediately preceding the commencement of this action, became indebted to plaintiff in the sum of $6,300 for and on account of money "had and received by said defendants to the use of and benefit of plaintiff," etc., that said sum "and the whole thereof is still due, owing and unpaid."

The defendants Ramirez and Elizalde filed separate answers to the complaint. The former denied that he became indebted to plaintiff in the sum alleged in the complaint, or in any other sum, within "the two years last past immediately preceding the commencement of this action, or at any time," and denied that there is due plaintiff from him said sum or "any sum or at all," etc.

Elizalde by his answer admitted that, within the time mentioned in the complaint, "defendants did become indebted to plaintiff in the sum of $6,300.00, for and on account of nine hundred head of sheep sold defendants by plaintiff," but denied that "there is now due to plaintiff from defendant" (Elizalde) the sum named or any sum; that, "within the last two years past" he (Elizalde) paid to defendant Ramirez the sum of $6,300, "as and for plaintiff herein"; that said Ramirez, as defendant "is informed and believes . . . has appropriated said sum of $6,300.00 to his own use." Said answer asked that judgment be awarded plaintiff as against Ramirez and that he (Elizalde) "be dismissed with his costs."

The trial was before the court, sitting without a jury. The court found that Ramirez was not at any time indebted to plaintiff in the sum of $6,300 or in any sum whatever but that Elizalde was indebted to the plaintiff in the sum of $5,600, for and on account of money had and received by the said defendant Elizalde, to the use and benefit of

plaintiff, and that the whole of said sum "is now owing and unpaid," etc.

Judgment was, upon the findings, awarded and entered in favor of plaintiff against Elizalde for the sum of $5,600 and costs, and in favor of Ramirez and the action as to him dismissed.

The plaintiff moved for a new trial as to Ramirez and the motion was denied.

The appeal is by the plaintiff from the judgment in favor of defendant Ramirez and from the order denying him a new trial as to said defendant.

This case in a different form was once before considered by this court, the appeal therein being from a judgment entered upon an order granting a nonsuit. (*Biurrun* v. *Elizalde et al.,* 61 Cal. App. 675 [215 Pac. 690].) Therein it was held that the plaintiff had introduced sufficient evidence to make out a *prima facie* case under the allegations of his complaint, and the judgment of nonsuit was accordingly reversed.

The points urged for a reversal are: That the findings are not supported by the evidence, and that what purport to be the findings are not findings of fact but conclusions of law.

It appears that plaintiff was, in the latter part of the year 1919, the owner of a band of 728 head of sheep and that he was then without the necessary pasture for the proper feeding of the sheep. On the twenty-sixth day of December, 1919, the plaintiff, so he testified, met Elizalde, who is a cousin of plaintiff, and Ramirez in front of the Western Hotel, in the city of Marysville, and on that occasion plaintiff proposed to Elizalde that if he (Elizalde) would take possession of his 728 head of sheep, and feed and care for them, he (plaintiff) "would pay him $2,176.00 as expenses for running them, and when he (Elizalde) sold the sheep he was to pay me $8.00 per head and keep for himself all that he received over that sum. We then went to the First National Bank," plaintiff proceeded to testify, "and I gave Mr. Elizalde a check for $2,176.00. I had 728 head of sheep that I turned over to Mr. Elizalde. After we left the bank, we had a conversation outside on the same day, and Mr. Ramirez suggested that we make a note, and Mr. Ramirez wrote a note for us for the sum

of $8,000.00. After I got the note I took it up to Mr. Carlin's office and Mr. Carlin said it was no good, and he drew another note, which note Mr. Elizalde signed.'' This note, plaintiff testified, was given to him as security for the sheep or for the payment of any money received by Elizalde in the sale of the sheep. Plaintiff also stated that he did not sell the sheep to Elizalde, but merely turned them over to the latter on the conditions above explained. The plaintiff further testified that Elizalde sold 700 of the sheep to a Mr. Carey, receiving therefor the sum of $9 per. head. Having learned of this sale, plaintiff made a demand on Elizalde for the payment of the money received on said sale. This money, or the check therefor, as will presently be more fully explained, was by Elizalde turned over to Ramirez, with certain directions as to the disposition thereof.

Elizalde testified that he did not buy the plaintiff's sheep, but took possession of the flock to feed and care for under the terms and conditions of the agreement as shown by the testimony of plaintiff as above given; that the agreement was made in the presence of Ramirez. He stated that the latter suggested that plaintiff advance the sum of $2,176 to witness for the ''running expenses'' incurred in feeding and taking care of the sheep and that witness then execute and deliver to plaintiff his note for $8,000 ''as security for the sheep''; that plaintiff, acting upon said suggestion, advanced the sum of $2,176 to witness, and that the latter, likewise prompted, gave his note to plaintiff for the sum of $8,000. Elizalde further testified that, after the delivery of plaintiff's sheep to him and, on the eighth day of January, 1920, he sold 700 head thereof, together with 108 head of his own, to a Mr. Carey at the rate of $9 per head; that he received from Carey for the sheep a check for the sum of $7,272; that he later indorsed and delivered said check to Ramirez, with instructions to pay to plaintiff out of the money represented by said check the sum of $5,600, said sum being the total amount for which he had sold plaintiff's 700 head of sheep at $8 per head, and to ''put the balance to my credit.'' At that time, Elizalde testified, he was indebted to Ramirez in the sum of $16,000.

It appears that Ramirez did not appropriate the money to the purposes for which Elizalde (so the latter testified)

entrusted it to him. The plaintiff testified that, having been informed of the delivery of the money to Ramirez, he made a demand on the latter for so much of the money as represented the amount received by Elizalde for his (plaintiff's) sheep, but Ramirez refused to comply with the demand for reasons explained by him in his testimony given when the case was called for the further trial thereof after it had been returned to the court below by this court upon reversing the judgment entered upon the order granting the nonsuit. This brings us to the testimony of Ramirez, which, in substance, is as follows:

"I know Vicente Biurrun, the plaintiff, and Eulalio Elizalde, the other defendant. I knew them both in the latter part of 1919 and the forepart of 1920. I did not meet Mr. Elizalde or Mr. Biurrun on or about the 26th day of December, 1919, or close to the first day of January, 1920, at the Western Hotel in Marysville. I met Mr. Elizalde. He came to my place of business at 224 C Street in Marysville, and wanted me to make a note for Mr. Biurrun. I told him to bring Mr. Biurrun here, but he said no, he is at the Western Hotel, and I said I have not got the time, but I will see if I have a blank, and I took up a blank from the Rideout Bank and rushed over to the Western, filled it out and gave it to Mr. Elizalde. I could not swear whether I saw Mr. Biurrun sign the note; I do not remember the amount of the note, and I do not know what the transaction was at all. I do not recall going to the First National Bank with these gentlemen on that day. I made the note out at the Western Hotel. Mr. Elizalde told me at that time that he wanted to give Mr. Biurrun a note, and I wrote it out as he dictated it to me, and I went right back to my place of business. Some time about January 1st, 1920, I saw Mr. Elizalde and received some money from him, $6,272.00, I believe it was. It was on a check and when I received it I put it in the First National Bank of this city, the exact date, I do not know, about January 13th, 1920. At the time Elizalde gave me this check, he told me to pay $3,000.00 to Feliciano Goni, and he said I need the balance for feed. You deposit it for me and I will draw on you. I know Feliciano Goni. Elizalde was in the sheep business at that time. Upon receipt of this money, I paid $3,000.00 to Feliciano Goni, on the 23rd day

of January, 1920, by check upon the First National Bank. I have not got the check; I have lost it; the cancelled check was returned to me. After paying the check of $3,000.00, I still had some money in my hands belonging to Elizalde, and he was drawing on me and I was advancing him money at that time. I did not keep one cent of the money for myself. At the time Mr. Elizalde gave me $7,272.00, he did not mention Mr. Biurrun's name, nor did he tell me to pay it to Mr. Biurrun, the plaintiff in this action; there was not a word said about Biurrun at all. I was not interested financially in the transaction between Elizalde and Biurrun with reference to the sheep; I did not know anything about their business. Mr. Biurrun did not call at my place of business on the 1st day of April, 1920, and ask me for any money. He never at that time, or any other time, told me that Elizalde was willing to pay in sheep, and I did not tell him, 'I will not give you the sheep or any money.' My only reason in filling out the note was as an act of accommodation and friendship, and that ended my connection with the sheep transaction. After paying Goni, I paid out to Elizalde more than the balance that was left; I am not indebted to Biurrun on my own account; I never sold him any sheep, nor bought any sheep from him.''

Ramirez, on cross-examination, stood by his direct examination, but added that, while it was true that Elizalde was indebted to him in a large sum, he did not ask him whether he (plaintiff) ''could apply this check on that indebtedness,'' and that he did not so apply it. He further stated on cross-examination that ''Elizalde simply gave me the check''; that ''he did not tell me what the check was for''; that he ''simply said pay Goni $3,000.00, and keep the balance to my account. There was not a word said about paying my bill.'' He stated that when Elizalde handed him the check he (Elizalde) did not tell him that he (Elizalde) sold 700 of Biurrun's sheep. Ramirez, further testifying on cross-examination, stated that when he prepared the $8,000 note in favor of Biurrun for Elizalde to sign, he had no conversation with Biurrun; that he merely exchanged greetings with him, and that he (Ramirez) did not ''mention any sheep'' to Biurrun, ''nor did he to me''; that Birrun ''did not tell me why he wanted this note from Elizalde''; that ''Biurrun never asked me for any money'' (referring to the

testimony of Biurrun that he demanded of Ramirez payment
of any of the money delivered to the latter in the form
of a check by Elizalde).

W. C. Owens, assistant cashier of the First National
Bank of Marysville, testifying from "ledger sheet No. 1"
of the account of defendant Ramirez, stated that, according
to said account, Ramirez, on the thirteenth day of Jan-
uary, 1920, deposited the sum of $6,272, and that it also
showed that on the twenty-eighth day of January, 1920, a
withdrawal of $3,000 from said account was made, but that,
as the check was returned to the maker on the thirty-first
day of January, 1920, he had no way of ascertaining to
whom the withdrawal was made.

A statement, reduced to writing, made by Elizalde in the
office of an attorney on May 17, 1921 (at which time a
suit by one Bastiqueta against Ramirez and Elizalde was
pending), in which Elizalde declared that he gave the check
mentioned to Ramirez, with directions to pay $3,000 to F.
Goni on a note held by the latter against Elizalde, and to
retain the balance of the check for him (Elizalde), was
introduced in evidence. W. P. Rich, the attorney in whose
office said statement was made, testified that he heard Elizalde
make the statement that he gave the check to Ramirez with
directions to pay Goni $3,000 of the check and to keep the
balance thereof for him (Elizalde); that, in fact, that state-
ment by Elizalde was made in response to questions pro-
pounded to him by Rich, and that thereupon the latter
caused the statement to be reduced to writing by his
stenographer, and that Elizalde signed it after Ramirez
had explained to the former the purport thereof.

Elizalde, in rebuttal, stated that, while the signature to
the written statement was his, he had no recollection of
signing it; that Ramirez did not translate the writing to
him.

The above embodies a comprehensive statement in sub-
stance of the testimony presented by the parties to the
action.

The specific contention of the plaintiff, in support of his
general contention that the decision below is afforded no
support by the evidence, is that, the sum of money to which
he was entitled on account of the sale of his sheep having
been delivered to Ramirez by Elizalde with specific instruc-

tions by the latter that he (Ramirez) pay the same to plaintiff, Ramirez held said sum of money in trust for his (plaintiff's) use or benefit, and that, therefore, the plaintiff is authorized in law to proceed against Ramirez in an action for money had and received, irrespective of the disposition the latter might have made of it. Indeed, the plaintiff goes further and contends that, even if Ramirez received the sum of $5,600 out of the check to which plaintiff was entitled without knowledge, either at the time he received it or at any subsequent time, that the plaintiff was the owner and entitled to receive said sum out of said check, Ramirez was, nevertheless, subject to an action by plaintiff for the recovery of said sum of money. [1] It is obviously true that where one receives money in trust to be paid to another who is the owner thereof, the latter may hold the trustee accountable for the money so received, even though the latter had appropriated it to the payment of the debts of the trustor, or otherwise diverted its use to a purpose other than that for which it was delivered to him. [2] And undoubtedly if one obtains possession of the money or other property of another and retains it in his possession, the owner of the money or other property may proceed against and maintain an action against the party having possession of the money or other property for the recovery of the same, whenever the owner is in law entitled to such possession. But, in urging the propositions above stated, the plaintiff necessarily proceeds upon the assumption that it is undisputed that Elizalde, on delivering the check to Ramirez, instructed the latter to pay to plaintiff, out of said check, $5,600, and that Ramirez accepted the check upon the condition that such payment should be made; that Ramirez did not pay Goni $3,000 out of the check and the balance to Elizalde, and that he (Ramirez) still retains the money received by him on the check. The assumption is without foundation. [3] It was with the trial court, as the trier of the questions of fact, to accept as true or reject as untrue the testimony given before it by any of the witnesses. Of course, as often it has been said, the power thus vested in juries or trial courts may not be arbitrarily or capriciously exercised, but only in the exercise of a sound discretion upon a consideration of the testimony by the tests alone available to the triers of issues of fact

at *nisi prius*. And, where, as here, there is no showing, or nothing on the face of the record to indicate, that the triers of the fact have arbitrarily or without just reason accepted or rejected particular testimony, the presumption must be indulged on appeal that there has been no arbitrary rejection or acceptance of any testimony, but that the triers have, for sufficient legal reasons, accepted as true the testimony with which the final result arrived at or the judgment harmonizes and rejected as of no probative value testimony which tended to lead to an opposite conclusion. There is, as is to be observed, a positive conflict in the testimony, and the findings show that the trial court accepted the testimony of Ramirez and by reason thereof of necessity rejected that of Elizalde and Biurrun upon the points upon which the testimony of those parties disagree. It is true that the findings are not specific, but follow, substantially, the negative averments of the answer. [4] Findings phrased in general language or which are substantially in the language of one of the pleadings, whose averments, whether affirmative or negative, are not themselves specific, if otherwise sufficient, always imply the finding of every fact vital and essential to the support of the judgment and the finding that any fact which would not support the judgment and to which some of the witnesses had testified in the trial was not true. Hence, the findings here imply the finding of every fact vital and essential to the support of the judgment, or, specifically speaking, the findings imply the finding of the following facts: That Ramirez knew nothing at any time, until perhaps this action was brought, about the agreement between plaintiff and Elizalde, whatever it may have been, whereby the latter was to feed and care for plaintiff's sheep, or that he (Elizalde) had authority to sell said sheep; that Ramirez did not know, when he received the check from Elizalde, that the latter had sold plaintiff's sheep, or that, if such was the fact, the bulk of the money represented by the check was received by Elizalde as in payment for plaintiff's sheep on the sale thereof by Elizalde; that Elizalde, on delivering the check to Ramirez, did not instruct the latter to pay any part thereof or any money to plaintiff, but specifically directed Ramirez to pay Goni, to whom Elizalde was indebted in a large sum, out of said money, the sum of $3,000, and to keep or deposit the bal-

ance for him (Elizalde) and for his use and benefit; that Ramirez, in accordance with the directions so given him by Elizalde, paid Goni $3,000 within a few days after he received the check, that he deposited or kept for Elizalde the balance of the money represented by the check and from time to time, as Elizalde called for it, paid him said balance; that plaintiff, at no time prior to the bringing of this action, demanded from Ramirez payment of any money received by the latter on said check; that Ramirez neither at the time this action was instituted nor for some time prior thereto, had in his possession any money belonging to plaintiff.

The findings thus interpreted render untenable the argument of plaintiff's counsel, as indicated above, and, consequently, render inapplicable the cases cited in plaintiff's brief as in support of said argument.

The contention that upon the question whether plaintiff did or did not sell his sheep to Elizalde, instead of employing the latter to feed and care for them, the decision of this court on the appeal from the judgment of nonsuit is *res adjudicata,* for the reason that, after the case was returned by this court to the court below for a trial thereof upon the facts, no other testimony addressed to that question was received, is without merit. In the first place, it is to be remarked that the point thus made is of no legal consequence in the decision of this appeal. **[5]** In the second place, it is to be observed that a judgment on nonsuit, whether by a trial court or a court of review, cannot operate as an estoppel upon the issues of fact. A motion for a nonsuit, as has often been declared in the cases, is in effect a demurrer to the evidence, and, like a demurrer to a pleading, admits the truth of the facts proved, but denies that they as a matter of law operate to sustain or support the plaintiff's case. It may happen, and no doubt it has happened, that, upon the very same evidence upon which a reversal of a judgment of nonsuit has been ordered the trial court may render an unimpeachable judgment upon the merits of the case in favor of defendant. The reason is that the trial court, when entertaining a motion for a nonsuit, is dealing entirely with a question of law and must attach to the evidence, whether properly or improperly received, its full probative value, whereas, when deciding

the case on its merits, so far as the facts are concerned, it is dealing with a question of fact, in the decision of which it is vested with the power of believing or disbelieving any testimony in the case and deciding accordingly. (See *Merritt* v. *Campbell*, 47 Cal. 545; *City and County of San Francisco* v. *Brown*, 153 Cal. 644, 648 [96 Pac. 281]; *Ramsey* v. *Powers et al.*, 74 Cal. App. 621 [241 Pac. 567].) Nor does the doctrine of the "law of the case" apply here, if that is what plaintiff really means to claim in asserting that the judgment of this court on the nonsuit is *res adjudicata*. The cases of *McGraw* v. *Friend & Terry Lumber Co.*, 133 Cal. 589 [65 Pac. 1051], and *Neale* v. *Morrow*, 163 Cal. 445 [125 Pac. 1052], cited by counsel for plaintiff in support of their view of the effect of the judgment of this court in the respect mentioned, contain no pronouncements inconsistent with the views here expressed.

[6] The contention that the findings are insufficient because they constitute or involve conclusions of law rather than findings of fact cannot be upheld. Specific findings are always to be preferred to general findings, but findings in general terms have been held sufficient where, as here, they follow the averments or denials of the complaint or answer and so decide the issue or issues submitted by the pleadings. It is true that the findings here involve, in a measure, conclusions of law. This is more or less true of nearly every set of findings made by trial courts, and it is so because the rule is that findings, as is true in pleading the facts, must be of ultimate and not of probative facts— that is to say, the findings of fact are or should be ultimate conclusions educed from the facts proved. Yet, as stated, we often find what strictly are conclusions of law properly serving the office of findings of fact. For illustration, on an issue of debt, where the court finds generally that the defendant was not, at the time mentioned in the complaint, nor at any other time, indebted to the plaintiff in the sum claimed or any other sum, we have a good finding of fact, although, strictly speaking, whether one is or is not indebted to another is also a question of law to be determined from the probative facts. [7] In the present case the plaintiff's action, as seen, is one for money had and received. No fraud or mistake or *mala fides* in the handling of trust funds is or are alleged. The defendant,

therefore, was required merely to set up the general issue or a general denial. Therefore, the issue tendered and to be tried was merely whether Ramirez received and held in his possession money belonging to plaintiff. Hence, the findings in the negative language of the answer as clearly, squarely, and effectually decided the single issue made by the complaint and answer as the court could have done by specifically finding upon the variety of probative facts directed to the support or the demolition of the affirmative of that issue, and measures up to the rule that findings must be sufficiently definite and clear as not to require an investigation on review to determine what issue has been decided. (*Chatfield* v. *Continental Building etc. Association,* 6 Cal. App. 665, 669 [92 Pac. 1040].)

[8] While the point that the court erred in admitting in evidence the written statement made and signed by Elizalde prior to the trial hereof to the effect that he directed Ramirez to pay out of the check the sum of $3,000 to Goni is included in the specifications of "errors in law occurring at the trial," there is no reference to or discussion of said point in the briefs of counsel for plaintiff. We are, therefore, authorized to assume that the point is abandoned or waived. Still it may be well enough to explain why the point cannot be maintained. The only ground of objection to the admissibility of the statement was that "no foundation had been laid outside of the testimony of an interested party that he interpreted this instrument to Elizalde, that it had not been shown that Elizalde understood the contents because he cannot read or write the English language." The statement was admissible as in impeachment of the testimony of Elizalde by virtue of the provisions of section 2052 of the Code of Civil Procedure. No objection was made that the foundation for the introduction of impeaching testimony as expressly prescribed by said section was not laid, but, if such objection had been made, it would have been without legal justification, inasmuch as Elizalde stated that he remembered the time and place at which he signed the statement and that the signature to the statement received in evidence was his, declaring, however, that he did not understand the purport thereof when he signed it. Ramirez testified that he explained to Elizalde in his own language (the Spanish) the real contents of the state-

ment before the latter subscribed his name thereto. While Elizalde contradicted this testimony of Ramirez, it was for the court to decide whether Ramirez or Elizalde told the truth about the translation of the contents of the statement to the latter in his native language and to find, as presumptively it did find, that Elizalde thus learned and, at the time he signed the statement, well understood and knew the full import thereof.

There are no other points requiring attention herein.

The judgment is affirmed.

Plummer, J., and Finch, P. J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on December 31, 1925.