[Civ. No. 9727.   Third Dist.   Feb. 11, 1960.]

FRED SAVAGE, Respondent, v. CRAG LUMBER COM-
PANY, INC., et al., Appellants.

Morris M. Grupp for Appellants.

Spurr & Brunner for Respondent.

VAN DYKE, P. J.—This is an appeal from a judgment in a declaratory action which quieted respondent's title to two tractors and awarded him a separate money judgment against each of the appellants.

The trial court made the following findings of fact: On and prior to March 1, 1955, defendant Crag Lumber Company, Inc., (hereinafter called Crag) was the purchaser under contract of conditional sale of certain heavy logging equipment. The seller was Moore Equipment Company of Stockton (hereinafter called Moore). Title was reserved by Moore pending payment. As of March 1, 1955, there was unpaid the sum of $26,719.26 upon both tractors. Prior to March 1, 1955, plaintiff and defendant Crag entered into an oral agreement wherein Crag agreed to sell and plaintiff agreed to buy the tractors upon the following terms: Plaintiff should pay Crag an amount equal to the balance due to Moore, payment to be made by deducting, from his earnings, $2.00 per thousand board feet of all timber logged by him through his use of said equipment. When the balance owed by Crag to Moore should have been fully paid to Crag plaintiff would become owner of the equipment. Crag agreed to pay to Moore the balance due on its contract with Moore. The court further found that plaintiff re-

quested of Crag's general manager, one Ed Lessard, with whom he dealt, that the contract be put into writing, but Lessard refused, stating that a writing was not necessary, that his word was good, and that he would live up to his oral agreement. Soon after March 1, 1955, relying upon said oral contract and the said representations of Lessard that it would be performed as agreed, plaintiff took possession of the tractors. He repaired and restored them at a cost to him of some $3,000 and put them to work in the Crag woods for the purpose of producing logs for the Crag lumber mill. Pursuant to said agreement plaintiff paid Crag from March 1, 1955, through August, 1957, a sum in excess of $26,719.26, to wit: the sum of $28,394.68 and also paid to Eastshore Lumber Company from September 1, 1957, through December, 1957, $2,326.13. In December of 1956 Crag fully paid Moore the balance due under its contract with Moore. The overpayments made by plaintiff to Crag of $1,675.42, and to Eastshore Lumber Company of $2,326.13 were paid under mistake by plaintiff in the belief that he was making payments due under said oral agreement and without knowledge that he had paid to Crag the entire balance due from him by June 1, 1957. Not until the end of 1957 did plaintiff learn there was likely to be a change in management of Crag from Lessard to Eastshore Lumber Company and he first became suspicious that his contract with Crag would not be honored on August 29, 1957, when he demanded of Crag a statement of the balance due from him on the purchase price of the equipment. Thereafter, on September 5th, plaintiff for the first time learned that it was not the intention of Crag to honor his oral agreement and that Crag contended that his possession of the tractors was pursuant to the terms of a lease rather than a contract of sale. Before the end of August, 1957, Eastshore Lumber Company had acquired all the capital stock of Crag and effective September 1, 1957, took over the management of Crag and caused the assets of Crag to be transferred to Eastshore Lumber Company. By reason thereof Eastshore Lumber Company claimed to be the owner of the tractors, subject only to the right of plaintiff to possession as a lessee thereof. Plaintiff has title to said equipment and is entitled to possession thereof. The court gave judgment pursuant to said findings, including a money judgment against Crag of $1,675.42 and against Eastshore Lumber Company of $2,326.13.

[■■] Appellants argue at length that they properly raised the defense of the statute of frauds and that, contrary to a

finding of the trial court, they never waived that defense. We need not discuss these matters, since it is conceded by respondent that the defense of the statute was an issue in the case and that the finding of waiver was without support. We may say we agree that the statute was properly in the case as a defense. However, the findings, supported by substantial evidence, show that the contract made was not within the statute of frauds since the property bargained for was delivered into the possession of respondent and while in his possession after such delivery was fully paid for. When the bargain was made respondent, a former employee of Crag, was in a hospital recovering from an accident involving the loss of a leg. There Lessard visited him and the two men came to the agreement found by the court. The evidence as to their conversation is conflicting and it is apparent that, as the trial judge once remarked, the bargain they made was somewhat "fantastic," but it was proved to the satisfaction of the trial court and we are bound by that court's findings. Respondent was an experienced logger and had been doing such work for Crag for some time. The generous nature of the bargain may have been in part motivated by the sympathy of Lessard for respondent's misfortunes and by a desire to help him. But Crag received ample consideration for the bargain made. The tractors were in bad shape, needing expensive repairs. Crag desired to get rid of the logging operation and yet obtain a supply of logs for its mill. If the price at which it sold, that is, the balance owed by it upon the tractors, was generous as to respondent, it was yet substantial. The evidence that the bargain was made was sufficient. As soon as respondent got out of the hospital he took delivery of the tractors and started logging for Crag. There was deducted $2.00 per thousand board feet from sums earned from logging and the same was credited upon the contract. Appellants dispute this credit and claim that there was no contract of sale and that the sums, instead of being credited upon the purchase contract, were a charge against respondent for rental of the tractors. We shall say more about this later.

There is another reason why the defense of the statute of frauds failed and that is because of the estoppel of appellants to assert the statute. As stated, the court found, and the finding is supported by substantial evidence, that when the bargain had been orally arrived at respondent requested that it be reduced to writing and Lessard refused, saying there was no need, that his word was good and he would live up to the oral contract.     The doctrine of

estoppel to assert the statute of frauds has been consistently applied by the courts of this state to prevent fraud that would result from refusal to enforce oral contracts in certain circumstances. Such fraud may inhere in the unconscionable injury that would result from denying enforcement of the contract after one party has been induced by the other seriously to change his position in reliance on the contract or in the unjust enrichment that would result if a party who has received the benefits of the other's performance were allowed to rely upon the statute. In many cases both elements are present. Thus not only may one party have so seriously changed his position in reliance upon, or in performance of, the contract that he would suffer an unconscionable injury if it were not enforced, but the other may have reaped the benefits of the contract so that he would be unjustly enriched if he could escape its obligations. (*Monarco* v. *Lo Greco,* 35 Cal.2d 621, 624-626 [220 P.2d 737].) ▆▆▆ Either element may be sufficient and in this case we find both present. As will be seen later, respondent did not bargain to pay rent for the tractors. Collateral to the bargain to purchase the tractors or perhaps as a part of it, respondent undertook to log for Crag. There is evidence that in addition to the two tractors being purchased from Crag, plaintiff put to work in the Crag woods a third tractor which he was purchasing from another source and permitted the same deduction per thousand to be made for the work produced by this third tractor. He reasonably hoped, as the record shows, to get the benefit of his bargain by paying out on the purchase price of the tractors, thus obtaining title thereto and reaping, in addition, whatever profit he might derive from the enterprise. If the contract is not enforced he will have paid for the tractors and will not receive them. On the other hand, appellants will retain them and will have received the other benefits of the bargain. In addition, they will retain the sums by which respondent overpaid his obligation. The trial court found that these considerations amounted to an estoppel on the part of appellants to assert the statute and we think the evidence sustains the court's findings in this regard.

▆▆▆ Appellants contend further that the evidence does not support the court's findings as to the bargain made. Herein they rely upon the manner in which Crag and respondent kept account of respondent's payments through deduction by Crag from respondent's logging earnings. It appears that Crag recorded these payments as rental for the tractors; that these

accounts were kept by Crag's bookkeeper, who also did the bookkeeping for respondent during off-hours from his employment by Crag and that he kept respondent's records of payments in the same way, designating payments as rentals. On these and other factors which we think it unnecessary to fully relate, appellants argue that the evidence shows beyond dispute the real bargain was nothing more than a rental of the tractors by Crag to respondent for the purpose of performing logging in the Crag woods. But appellants cannot maintain this position in view of the record which, as we have stated, disclosed substantial testimony that the actual bargain made was as found by the court. The fact that in the bookkeeping records the parties may have designated the payments or deductions as rental rather than as payments upon the contract cannot suffice to overthrow the findings of the trial court based upon substantial proof as to what the bargain was. We think this point need not be labored as it seems clear to us that the court could find the bargain as it did notwithstanding facts and circumstances which might have justified the court in finding that no contract of purchase and sale had been made. Respondent and several witnesses who were present during at least a part of the negotiations between respondent and Lessard testified to the fact that the bargain made was a purchase of the tractors by respondent on the terms as found by the court. The court's findings must stand.

Coming now to that portion of the judgment appealed from by which money judgments were awarded against Crag and Eastshore Lumber Company, little need be said beyond what has already been said. The bargain being what it was, and it being without dispute that respondent had paid more than the price of the tractors and that of the excess Crag had received the amount adjudged against it and Eastshore Lumber Company had received the amount adjudged against it, the result is that each had received money without consideration which they were, in good conscience, required to return to respondent. Having so received it, the law implied their promise to repay, which promise they broke when they refused to repay on demand. It was proper for the court to make the money awards which it did.

Nothing more need be discussed.

The judgment appealed from is affirmed as to both appellants.

Peek, J., and Schottky, J., concurred.