[Civ. No. 22387. First Dist., Div. Three. Jan. 26, 1966.]

ASSOCIATED CREDITORS' AGENCY, Plaintiff and Respondent, v. HALEY LAND CO., INC., Defendant, Cross-defendant and Appellant; WESLEY J. MART et al., Defendants, Cross-complainants and Respondents.

Nathan Engelberg for Defendant, Cross-defendant and Appellant.

John G. Evans, Carl Anthony and James M. Conners for Plaintiff and Respondent.

Richard F. McCarthy for Defendants, Cross-complainants and Respondents.

SALSMAN, J.—This action was commenced by respondent Associated Creditors' Agency, as assignee, to recover upon certain claims assigned to it, covering goods, wares and merchandise sold and delivered to the named defendants. There were many defendants named in the original complaint, but those before us on this appeal are Haley Land Co., Inc., El Campo Fraternal Golf & Country Club, Inc., and Wesley Mart and John Zacker.[1] In the same action, Mart filed a cross-complaint against Haley and El Campo, seeking damages for breach of certain oral agreements. The action was tried without a jury. The court found that Haley became indebted to respondent's assignors in the sum of $32,798. The court further found that Mart was entitled to recover from Haley the sum of $21,161.40 because of breach of an oral agreement between Mart and Haley. Upon entry of judgment for these amounts, Haley appealed.

In order to understand the issues presented by appellant Haley, it is necessary to set out the facts in some detail. The record shows that Haley is a corporation; that Dr. Samuel Levine is its president and Dr. Julius Levine is its secretary. Haley owned or controlled the real property upon which El Campo had its golf course, clubhouse and other facilities. El Campo occupied the premises under a lease arrangement with Haley. In November 1959, as a result of El Campo's inability to finance and manage its operations, and complete certain construction projects, Haley took over El Campo's facilities. In April 1960 Haley acquired an on-sale liquor license, and had it issued under the name of "El Campo Golf Course & Clubhouse". At all times during this controversy, the license remained in Haley's control.

It appears also that Mart, a partnership, owned and oper-

[1]Hereafter the Haley Land Co., Inc. will be referred to as "Haley," El Campo Fraternal Golf & Country Club, Inc. will be noted as "El

ated a bar and restaurant known as the Carriage House. In February 1960 Dr. Julius Levine was introduced to Mart and began to negotiate with Mart for the purpose of leasing to Mart the bar and restaurant, to be opened on the golf club premises. Dr. Levine represented to Mart that if Mart would sell its Carriage House operation, Haley would lease the bar and restaurant to Mart, and transfer to it the on-sale liquor license, so that Mart could conduct the bar and restaurant at the golf club. Various meetings between Mart and the Doctors Levine, representing Haley, followed. Haley's attorney prepared a proposed lease for Mart, and the terms were agreed upon. Mart sold its Carriage House business and made all necessary arrangements to open the bar and restaurant on the golf club premises. Mart repeatedly inquired of Dr. Julius Levine concerning execution of the lease and transfer to Mart of the liquor license. Dr. Levine assured Mart that the lease would be forthcoming and that the license would be transferred. When opening day arrived Mart protested to Dr. Levine that the bar and restaurant could not be opened without the lease and license. Dr. Levine replied: ''That's all right, I'll put you down in the Department of ABC as a manager at a dollar a year.'' In this manner, the bar and restaurant were opened for business. During May and June 1960 Mart continued to inquire of Haley about the lease and license, but received neither. In May 1960, unknown to Mart, Haley filed a request with the Corporation Commissioner for permission to negotiate a sale of all of its interest in the country club venture, and those of Doctors Levine to El Campo, or to purchase all of El Campo's interest. In its application, Haley recited that it had completed construction of the clubhouse, and had secured a liquor license ''. . . under which it is now operating a bar and restaurant in the clubhouse.'' When Mart learned these facts it made prompt inquiry of Dr. Levine and was told that El Campo would issue the lease to it and that Haley would then sell the license to Mart. Mart conducted fruitless negotiations with El Campo, seeking a lease of the bar and restaurant facilities. El Campo notified Mart that it would not give it a lease until Mart had the liquor license in its control. On July 5, 1961, with the impasse unresolved, Mart vacated the premises, leaving behind all of the furnishings and equipment,

Campo,'' and the partnership composed of Wesley Mart and John Zacker will be referred to simply as ''Mart.'' Associated Creditors' Agency is referred to hereafter as respondent.

as well as the stock of liquor purchased for sale at the clubhouse premises.

One of the trial court's findings was that Haley had become indebted to respondent's assignors in various sums, for goods, wares and merchandise sold to Haley. This finding is based upon the theory that, in the conduct of the bar and restaurant on the El Campo premises, Mart was but the agent of Haley. It is true that the evidence on this issue was in conflict, but since the existence of agency is mainly a question of fact, the trial court's finding based on such evidence must be upheld. (See *Brokaw* v. *Black Foxe Military Institute*, 37 Cal.2d 274, 278 [231 P.2d 816]; 1 Witkin, Summary of Cal. Law (1960) Agency, § 22, p. 401.) Appellant, however, seems to contend that there was no substantial evidence to show that Mart was the agent of Haley. But there is such evidence in the record. Thus, as we have previously related, at the opening of the bar and restaurant, when Mart protested its lack of both license and lease, Dr. Julius Levine told Mart "You will come in here as a manager until then, until that time you will be the manager of the Club. . . ." Dr. Levine also asserted that he would put Mart ". . . down in the Department of ABC as a manager. . . ." Later, after the bar and restaurant had been in operation for some time, Dr. Levine told Mart to ". . . put yourself on a wage, salary . . ." and to ". . . Put John down as bar manager and make yourself bartender. . . ." Further, in its application addressed to the Corporation Commissioner, Haley represented that it was then operating the bar and restaurant in the clubhouse. At all times here relevant, the on-sale liquor license was owned by Haley, doing business as El Campo Golf Course & Clubhouse. It was stipulated by the parties that no notice of intention to sell and transfer the business had ever been recorded and published by Haley. There was also testimony that salesmen, in soliciting to sell merchandise, customarily inquired about ownership, and often asked to see the on-sale license. There was also evidence that some merchants had knowledge that the Doctors Levine were operating the El Campo Golf & Country Club, and that suppliers and merchants doing business with retailers often exchange credit information. A Dun & Bradstreet credit report on "El Campo Golf & Country Club, Inc." issued in 1959, listed Dr. Julius Levine as president of the corporation. This is evidence from which the trial judge could reasonably infer that until such time as Mart obtained its lease and on-

sale liquor license, its operation of the bar and restaurant was as agent for Haley.

In finding XX, the trial court found that Haley ". . . . became indebted to the following creditors upon open book accounts for goods, wares and merchandise sold and delivered by said creditors to the said defendant, Haley. . . ." Then follows a list of the creditors, with a statement of the amount due each. Appellant's attack upon this finding is without merit. Appellant argues that the finding, particularly the statement that Haley "became indebted" to the named creditors, is but a conclusion of law, and that findings, to be upheld, must state ultimate facts. But here respondent properly pleaded by a common count that defendants (Haley among them) "became indebted . . . upon an open book account for goods, wares and merchandise sold and delivered. . . ." The finding followed the pleading. ▮ The rule is that where, as here, a general pleading of indebtedness is proper, a finding in the language of the pleading is sufficient. (*Biurrun* v. *Elizalde,* 75 Cal.App. 44, 55 [242 P. 109]; *Wood* v. *Mesmer,* 46 Cal.App. 257, 259 [189 P. 134]; 2 Witkin, Cal. Procedure, pp. 1844, 1845.)

▮ Appellant also argues that the issue as to whether Mart acted as agent for Haley has previously been decided and is hence res judicata as between Mart and Haley. It appears that Associated Coin Amusement Company brought an action against Mart to recover sums due on the lease of a coin machine by Mart for use in the El Campo bar and restaurant. In its answer Mart alleged that the contract was between Associated Coin Amusement Company and El Campo Golf & Country Club, and not between Associated and Mart (and Zacker) as individuals. In its judgment, the court found Mart (and Zacker) individually liable. That judgment is not res judicata of the issue of agency presented in this case. ▮ As recently stated in *Great Western Furniture Co.* v. *Porter Corp.,* 238 Cal.App.2d 502, 508 [48 Cal.Rptr. 76]: "Whether the doctrine of res judicata is considered in its primary aspects as a merger or bar, or in its secondary aspect as a collateral estoppel [citations], the general rule is that there must be an identity of the parties to the actions before the doctrine can become operative. [Citations.]" ▮ Here, of course, Haley was not a party to the action of the Associated Coin Amusement Company against Mart, nor was it a successor in interest or in privity with any party to that action.

Thus, there is no support for the claim that the judgment in that action is res judicata as to any issue presented in the case now before us.

As we have seen, the trial court awarded Mart a judgment on its cross-complaint in the sum of $21,161.40. The cross-complaint alleged that Haley and Mart entered into an oral agreement for the operation of the bar and restaurant at the country club; that Mart was to equip and supply the restaurant and bar, and that Haley was to secure and transfer an on-sale liquor license to Mart. It is also alleged that Mart sold its Carriage House operation, performed its part of the oral agreement, but that Haley refused to perform. The trial court's findings supported the allegations made in the cross-complaint, and its findings both with respect to the making of the oral agreement, its performance by Mart and breach by Haley, and its assessment of damages are fully supported by the evidence. Appellant contends that the trial court, in assessing its judgment, applied the doctrine of promissory estoppel, which it is urged is inapplicable upon the facts of this case. Respondent Mart asserts that the doctrine of promissory estoppel is applicable and fully supports the judgment on the cross-complaint. We find Mart's position to be well taken.

The Restatement of the Law of Contracts, volume 1, section 90, states the doctrine of promissory estoppel in this way: "A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." The doctrine is a part of the law of this state and has often been applied. (*Drennan* v. *Star Paving Co.*, 51 Cal.2d 409, 413 [333 P.2d 757]; *Morrison* v. *Home Savings & Loan Assn.*, 175 Cal.App. 2d 765 [346 P.2d 917]; *Wade* v. *Markwell & Co.*, 118 Cal. App.2d 410, 419 [258 P.2d 497, 37 A.L.R.2d 1363]; *West* v. *Hunt Foods, Inc.*, 101 Cal.App.2d 597, 604, 605 [225 P.2d 978].) Here there was evidence that Haley orally promised Mart that if the latter would sell its Carriage House bar and restaurant and come out to the country club and take charge of the bar and restaurant there, that Haley would secure an on-sale liquor license and transfer it to Mart upon payment of $10,000, and further, that Haley would procure a lease of the bar and restaurant premises for Mart. The evi-

dence supports the trial court's findings that Mart relied upon these oral promises and fully performed on its part, but that Haley did not. On the evidence in this record it is entirely clear that the doctrine of promissory estoppel is applicable and supports the trial court's judgment in Mart's favor.

Appellant Haley also contends that the statute of frauds (Code Civ. Proc., §§ 1973, 1973a) bars recovery by Mart on its cross-complaint. This contention is without merit. Mart correctly points out that the doctrine of estoppel precludes appellant's reliance upon the statute of frauds as a defense. The doctrine of estoppel to assert the statute of frauds as a defense is applicable where a party, by words or conduct, represents that he will stand by his oral agreement, and the other party, in reliance upon that representation, changes his position, to his detriment. (*Monarco* v. *Lo Greco,* 35 Cal.2d 621, 623 [220 P.2d 373]; *Seymour* v. *Oelrichs,* 156 Cal. 782, 794-795 [106 P. 88, 134 Am.St.Rep. 154]; *Le Blond* v. *Wolfe,* 83 Cal.App.2d 282, 286 [188 P.2d 278]; 1 Witkin, Summary of Cal. Law (1960) Contracts, § 111, p. 119.) The existence of an estoppel is a question of fact, unless, of course, but a single inference may be drawn from the facts. (*Goldstein* v. *McNeil,* 122 Cal.App.2d 608, 612 [265 P.2d 113]; *Krobitzsch* v. *Middleton,* 72 Cal.App.2d 804, 815 [165 P.2d 729].) The doctrine of estoppel to assert the statute of frauds is invoked to prevent fraud that inheres in unconscionable injury that would result from denying enforcement of the oral contract after one party has been induced by the other seriously to change his position in reliance upon the oral contract. (*Savage* v. *Crag Lumber Co.,* 177 Cal.App.2d 770, 773, 774 [2 Cal.Rptr. 498].) It is clearly applicable to the facts of this case, and supports the trial court's judgment on the cross-complaint.

Appellant's remaining contentions do not justify extended discussion. The claim that there is a fatal variance between the allegations of the cross-complaint and finding VIII cannot be supported. The cross-complaint alleged that Haley failed to transfer the on-sale liquor license upon tender of the $10,000 price; the finding states that Haley breached the oral agreement because it did not procure a lease for the restaurant and bar premises, as promised. Appellant was not misled or prevented from presenting its defense, nor does the variance result in any prejudice. All the issues were tried on their merits. (See Code Civ. Proc., §§ 469, 470.) In the absence of a showing of prejudice, the variance becomes immaterial.

618

Equally without substance is the contention that the evidence does not support finding VIII. Mart's testimony established that, under the oral agreement, both transfer of the liquor license and a lease of the bar and restaurant premises were promised by Haley. Other evidence shows that Haley put it beyond its power to secure a lease without consent of El Campo, and that El Campo would not grant Mart a lease without Mart's possession of the liquor license. Thus Mart was whip-sawed by Haley on the one side and by El Campo on the other. Under these circumstances Mart reasonably concluded that the oral agreement would not be performed by Haley, and was justified in abandoning the venture.

Judgment affirmed.

Draper, P. J., and Devine, J., concurred.